**Jeffrey KRUMM, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 71A03–0208–CR–259.**

Court of Appeals of Indiana.

Aug. 22, 2003.

Kenneth R. Martin, Goshen, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Jeffrey Krumm appeals his convictions and sentences for child molesting as a class A felony[1] and child molesting as a class C felony.[2] Krumm raises seven issues, which we restate as:

I. Whether the evidence is sufficient to sustain his convictions;

II. Whether the trial court committed fundamental error by admitting testimony that allegedly "vouched" for the victim;

III. Whether the trial court committed fundamental error by allowing the State's expert psychologist to respond to a hypothetical question propounded by the State;

IV. Whether the trial court committed fundamental error by limiting the testimony of witnesses regarding how the victim first made the molestation allegations;

V. Whether the trial court abused its discretion by limiting the testimony of Krumm's expert psychologist;

VI. Whether the trial court abused its discretion in sentencing Krumm; and

VII. Whether Krumm's sentence is inappropriate.[3]

We affirm.

The relevant facts follow. In 1996, Virginia Smith, her husband, and their three children, J.S., R.S., and K.S., moved to South Bend. R.S. was approximately nine years old at the time. As a result of oxygen deprivation at birth, R.S. is mildly mentally handicapped and has a communications disorder, which disrupts the manner and speed with which she processes sounds.

The Smiths lived near Krumm's home, which he shared with his wife, Jenny, and her two daughters, E.E. and K.K. Virginia met Jenny and asked her if she knew of a reputable babysitter in the neighborhood to babysit for her children for a few hours each day after school. Jenny said that she would be willing to babysit for the children. Jenny babysat for J.S., R.S., and K.S. after school from approximately 3:00 or 3:30 p.m. until 4:45 or 5:00 p.m., on holidays when the children were out of

---

1. Ind.Code § 35–42–4–3(a) (Supp.2002).

2. I.C. § 35–42–4–3(b).

3. Krumm argues that his sentence is manifestly unreasonable. However, our supreme court amended Ind. Appellate Rule 7(B), effective January 1, 2003. Under the amended rule, in considering whether to revise a sentence, we must determine if the sentence is "inappropriate" rather than whether the sentence is "manifestly unreasonable." Accordingly, although the sentence here was imposed prior to January 1, 2003, we address Krumm's sentence pursuant to an "inappropriate" sentence analysis. *Kien v. State*, 782 N.E.2d 398, 416 n. 12 (Ind.Ct.App.2003), *reh'g denied, trans. denied.*

school but Virginia had to work, and on days when the children were slightly sick and could not go to school. The children were also invited to sleep over at the Krumm residence approximately three times. Krumm was occasionally at the residence when Virginia picked up the children. Krumm also watched the children if Jenny had to go to the grocery store or run other errands.

In 1997, the Smiths moved, but the children were still invited to play and sleep over at the Krumm residence. In November 1999, R.S. and her sister, K.S., were invited to spend the night at the Krumm residence. On that night, Virginia learned that Jenny and Krumm had separated and that Jenny was no longer residing at the Krumm residence.

In late December 2000, Jenny called Virginia and informed her that "something may have happened" and advised Virginia to talk to R.S. and K.S. Transcript at 71. When Virginia asked R.S. whether something had happened, R.S. said, "yes." *Id.* at 72. The State charged Krumm with: (1) Count I, child molesting as a class A felony for "touching his penis to the mouth of [R.S.];" (2) Count II, child molesting as a class C felony for "touching the breasts of [R.S.] and kissing her;" and (3) Count III, attempted child molesting as a class A felony[4] for "touching his penis to the anus of [R.S.]."[5] Appellant's Appendix at 9–10.

At the time of the trial, R.S. was fifteen years old and attended special education classes. She was in the eighth grade in school but functioned at the third grade level. R.S. testified that Krumm had "touched parts of [her] body." *Id.* at 108. R.S. said that Krumm had kissed her breasts underneath her clothes. The kissing was "kind of weird like he was licking." *Id.* at 110. Krumm also kissed her mouth and placed his tongue inside of her mouth. R.S. also testified that Krumm would "send the girls upstairs" while he and R.S. were in the basement. *Id.* at 111. Krumm would take off his pants and ask R.S. to remove her pants. Krumm "would stick his [penis] into [her] privacy." *Id.* at 113. Krumm also touched "[her] butt with his privacy" and it was "painful." *Id.* at 115. R.S. also testified that on more than one occasion, Krumm placed "his man's privacy in [her] mouth." *Id.* at 116. This sometimes happened in the bathroom where Krumm would sit on the toilet and R.S. would kneel in front of him. R.S. testified that it tasted "nasty" and "little white stuff" would come out of Krumm's penis. *Id.* at 117. R.S. also testified that Krumm would make her sit on his penis. Krumm "made [R.S.] promise not to tell anyone" because "they would be mad." *Id.* at 120. Additionally, R.S. stated that Krumm showed her movies in his bedroom on three or four occasions. In the movies, she saw "a man and a woman ... naked" and they "were doing terrible things, same thing that happened to [her]." *Id.* at 128.

The jury also heard testimony from R.S.'s psychologist, Dr. Suzanne Courtney, who testified that she performed a "mental status exam" on R.S. and found that R.S. was "firmly based in reality." *Id.* at 145–146. R.S. was "able to carry on a coherent conversation" and "describe details with accuracy." *Id.* at 146. Dr. Courtney testified that R.S. has difficulty "articulating," especially when she is anxious. *Id.* at 148. Further, in evaluating R.S.'s memory,

---

**4.** Ind.Code §§ 35–42–4–3(a), 35–41–5–1 (1998).

**5.** Krumm was also charged at that time with an additional count of child molesting as a class A felony and three additional counts of child molesting as a class C felony for the alleged molestations of two other children. Krumm filed a motion to sever the charges, which the trial court granted.

storage, and retrieval process, Dr. Courtney found that R.S. "did have a very balanced ability to do that." *Id.* at 148. Dr. Courtney also testified, without objection from Krumm, as follows:

> And then as we got around to issues about why she was referred to me, they were consistent when I went back and looked at other data and corroborated with either the other stories that I had heard.

*Id.* at 148. Dr. Courtney found no indications that R.S. had difficulty distinguishing fantasy from reality.

Krumm's defense was that after watching a pornographic videotape, R.S. developed a false memory in which she believed the events in the videotape happened to her. The State questioned Dr. Courtney regarding false memories. Dr. Courtney stated that research in the field of traumatic memories suggests that such memories are less suggestive to manipulation. Further, the State asked Dr. Courtney the following question without objection from Krumm:

> Q. Doctor, can you state to a reasonable degree of medical certainty whether it's possible for a child to formulate a false memory based simply upon seeing a pornographic video a few times?
>
> A. I would say that the research would suggest that that's highly unlikely.

*Id.* at 155.

Angela Scott, a forensic interviewer with the CASIE Center, testified that she tries very hard to allow children to "explain in detail what happened." *Id.* at 252. Scott testified that "detail is important because there are times when nothing has happened." *Id.* at 253. According to Scott, R.S. was able to provide details and a description that followed a logical sequence.

Sergeant Eric Rhymer of the South Bend Police Department testified that he investigated R.S.'s allegations. In addition to having R.S. interviewed at the CASIE Center, he testified that he also had J.S. and K.S. interviewed, looking for "[s]omething to corroborate what the victim was saying, additional information." *Id.* at 262. Sergeant Rhymer also examined the former Krumm residence, especially the basement, to "see if it was conclusive with what [R.S.] had said." *Id.* at 263.

Dr. Sheridan McCabe, a psychologist, testified as an expert on behalf of the defense. In discussing whether a "cognitively impaired" child was under pressure from her mother to "come up with some kind of sexual history," Dr. McCabe was asked to respond to a hypothetical question as follows:

> Q. Is it possible under those circumstances for a person to create either a false memory or a false—for lack of a better word—rendition of events?
>
> A. Well, the way I would perceive it, I would see the situation being one in which the child would come to a belief that the recall was in fact an accurate one. In other words—

*Id.* at 354–355. The State then objected that Dr. McCabe's response was beyond the scope of the question. In a sidebar conference, the trial court sustained the objection, saying "[i]t's purely hypothetical, purely conjecture. I'm sustaining it, and I'm striking the answer." *Id.* at 355. After the sidebar conference concluded, the trial court told the jury that the objection was sustained and the answer was stricken. The trial court further instructed the jury that it "was not to consider that because it is spinning out from a very specifically limited hypothetical question and now conjecturing that there may have been all kinds of pressures, et cetera,

which there's no evidence in that hypothetical to suggest that." *Id.* at 355–356.

The jury found Krumm guilty of Count I, child molesting as a class A felony, and Count II, child molesting as a class C felony, but not guilty of Count III, attempted child molesting as a class A felony. In sentencing Krumm, the trial court found the following mitigators: (1) Krumm's minimal criminal record; (2) Krumm's strong work history; (3) Krumm's supportive family; (4) Krumm's work-related disability; and (5) the impact upon Krumm's two children. The trial court found the following aggravators: (1) violation of trust; (2) R.S.'s "very tender young age;" and (3) the fact that R.S. is developmentally disabled. Sentencing Transcript at 24–25. The trial court found the fact that R.S. is developmentally disabled to be the most significant aggravator and found that the aggravators outweighed the mitigators. The trial court sentenced Krumm to forty-eight years in the Indiana Department of Correction for the child molesting as a class A felony conviction and eight years for the child molesting as a class C felony conviction. The trial court ordered that the sentences be served concurrently.

I.

■■■ The first issue is whether the evidence is sufficient to sustain Krumm's convictions. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State,* 656 N.E.2d 816, 817 (Ind.1995), *reh'g denied.* Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

■■■ Krumm argues that the evidence is insufficient to support his convictions because R.S.'s testimony was incredibly dubious. The "incredible dubiosity" doctrine applies "where a sole witness presents inherently contradictory testimony that is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the defendant's guilt." *Thompson v. State,* 765 N.E.2d 1273, 1274 (Ind.2002). "Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." *Love v. State,* 761 N.E.2d 806, 810 (Ind.2002).

In support of Krumm's argument that R.S.'s testimony was lacking in credibility, Krumm cites to R.S.'s disability and medications, R.S.'s testimony that she was molested in various locations in the house while other children were also in the house, R.S.'s failure to notice Krumm's pubic hair and failure to accurately describe her and Krumm's body positions during the molestations, and a lack of physical evidence to corroborate R.S's account of the molestations. Krumm also argues that R.S. only alleged that the molestations occurred during the after school babysitting. Krumm contends that his work schedule made the opportunity to commit the alleged molestations "so limited as to be non-existent." Appellant's Brief at 11. Krumm also cites minor inconsistencies in R.S.'s testimony, such as her failure to accurately describe the color of the couch in the basement. According to Krumm, R.S. was so influenced by viewing a pornographic video that "the fantasy world of the pornographic actors had become integrated with her own personal history." *Id.* at 14. We find Krumm's argument unpersuasive.

Initially, we note that Krumm misconstrues the testimony presented to the jury.

Both Virginia and Jenny testified that Krumm babysat for the children when Jenny had to run errands. Both K.S. and E.E. testified that Krumm spent time alone with R.S. Additionally, R.S. specifically testified that some of the molestations occurred when she spent the night with the Krumms. More importantly, Krumm points to nothing inherently contradictory in R.S.'s testimony. R.S.'s testimony was not "so incredibly dubious or inherently improbable that no reasonable person could believe it." *Love,* 761 N.E.2d at 810. Consequently, the incredible dubiosity doctrine is inapplicable. The determination of whether R.S.'s testimony was believable was for the jury, and we find no proper grounds to set aside the verdict. The evidence is sufficient to support the jury's verdict. *Thompson,* 765 N.E.2d at 1275 (holding that the incredible dubiosity doctrine was inapplicable); *Heeter v. State,* 661 N.E.2d 612, 615–616 (Ind.Ct.App.1996) (holding that the incredible dubiosity doctrine was inapplicable in a child molestation prosecution where the victim's testimony, while inconsistent at times, was not incredible).

## II.

 The next issue is whether the trial court committed fundamental error by admitting testimony that allegedly "vouched" for the victim. Krumm argues that the trial court committed fundamental error by admitting the testimony of: (1) Dr. Courtney, the State's expert psychologist; (2) Angela Scott, a forensic interviewer from the CASIE Center; and (3) Sergeant Rhymer, the investigating detective. Specifically, Krumm argues that the testimony inappropriately bolstered R.S.'s credibility.

According to Krumm, Dr. Courtney exceeded the permissible bounds of testimony when she testified that R.S. was "firmly based in reality," that she found no indica-

tions that R.S. had difficulty distinguishing fantasy from reality, and that R.S. had "a very balanced ability" to store and retrieve memories. Transcript at 145–146, 148. Dr. Courtney also testified, without objection from Krumm, as follows:

> And then as we got around to issues about why she was referred to me, they were consistent when I went back and looked at other data and corroborated with either the other stories that I had heard.

*Id.* at 148. Krumm also complains that the CASIE Center's forensic interviewer, Angela Scott, implied that R.S. was telling the truth because Scott said that details were important "because there are times when nothing has happened" and later testified that R.S. was able to provide details. *Id.* at 253. Lastly, Krumm argues that Sergeant Rhymer bolstered R.S.'s claims by testifying that he looked for corroboration of R.S.'s account by interviewing R.S.'s siblings and viewing the Krumm's former residence. Krumm argues that this indicates that Sergeant Rhymer found corroborating evidence "because the case moved forward." Appellant's Brief at 18.

Initially, we note that Krumm failed to object to the admission of this testimony, and we will therefore only reverse if we find fundamental error. The standard for fundamental error is whether the error was so prejudicial to the rights of the defendant that a fair trial was impossible. *Boatright v. State,* 759 N.E.2d 1038, 1042 (Ind.2001). Ind. Evidence Rule 704(b) provides that: "[w]itnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." However, our supreme court has recognized "that there is a special problem in assessing the credibility of children who are called upon as witnesses to describe

sexual conduct." *Lawrence v. State,* 464 N.E.2d 923, 925 (Ind.1984), *abrogated on other grounds by Lannan v. State,* 600 N.E.2d 1334 (Ind.1992).

In *Lawrence,* our supreme court considered the testimony of a clinical social worker who testified that an alleged victim of child molestation had "a strong ability to know what happens to her" and had "a great anxiety on (her) part to be very sure she was telling the truth very precisely." *Id.* The defendant argued that the trial court abused its discretion by admitting the testimony over his objection. *Id.* at 924–925. Our supreme court held that:

> Whenever an alleged child victim takes the witness stand in such cases, the child's capacity to accurately describe a meeting with an adult which may involve touching, sexual stimulation, displays of affection and the like, is automatically in issue, whether or not there is an effort by the opponent of such witness to impeach on the basis of a lack of such capacity. The presence of that issue justifies the court in permitting some accrediting of the child witness in the form of opinions from parents, teachers, and others having adequate experience with the child, that the child is not prone to exaggerate or fantasize about sexual matters. Such opinions will facilitate an original credibility assessment of the child by the trier of fact, so long as they do not take the direct form of "I believe the child's story", or "In my opinion the child is telling the truth." As we read the challenged testimony of the social worker in this case it did not take this direct form, and was thus properly permitted by the trial court to be heard by the jury.

*Id.* at 925.

Similarly, our supreme court recently analyzed the case of a psychologist who testified during a trial for the alleged molestation of a child with autism. *Carter v. State,* 754 N.E.2d 877, 882 (Ind.2001), *reh'g denied, cert. denied,* 537 U.S. 831, 123 S.Ct. 135, 154 L.Ed.2d 47 (2002). The psychologist testified that children with autism generally have trouble deliberately deceiving others. *Id.* Although the psychologist "did not at any point directly state an opinion that [the victim] was telling the truth, the jury could easily have drawn a logical inference: autistic children do not deliberately lie, [the victim] is autistic, therefore [the victim] is not lying." *Id.* Our supreme court concluded that "based on the entire context of the expert's testimony that she came close to, but did not cross the line into impermissible Rule 704(b) vouching." *Id.* at 882–883. Although the expert's statements "may have been persuasive, the jury still had to draw its own inference as to whether [the victim's] story was an accurate account." *Id.* at 883.

Here, the testimony at issue did not cross the line into impermissible vouching. Although Dr. Courtney's and Angela Scott's testimony may have been persuasive, neither directly commented on the credibility of R.S.'s testimony. Moreover, we fail to see how Sergeant Rhymer's testimony regarding his investigative process commented directly or indirectly upon R.S.'s credibility. He simply testified that he performed certain steps in his investigation looking for corroboration of R.S.'s account. He did not testify that he found such corroboration. Krumm has failed to demonstrate that an error occurred. *See, e.g., Hook v. State,* 705 N.E.2d 219, 221–223 (Ind.Ct.App.1999) (holding that a detective's testimony that in his experience dealing with child molestation cases it was not uncommon for children to give inconsistent statements over time was not a direct comment upon the credibility of the victim's testimony), *trans. denied.* Conse-

quently, the trial court did not commit fundamental error when it permitted the testimony.

### III.

■ The next issue is whether the trial court committed fundamental error by allowing the State's expert psychologist to respond to a hypothetical question propounded by the State. During Dr. Courtney's direct testimony, she differentiated between how memories of traumatic events are stored and how memories of typical events are stored. Dr. Courtney testified that research into false memories indicated that memories of a nontraumatic nature can be manipulated. When asked whether traumatic memories are subject to manipulation, Dr. Courtney testified that "[a]ctually the research in this field of traumatic memory suggests that it is less suggestive to manipulation, that central themes are encoded in this implicit kind of sensory way so they are less malleable." Transcript at 154. The State later asked her the following question:

> Q. Doctor, can you state to a reasonable degree of medical certainty whether it's possible for a child to formulate a false memory based simply upon seeing a pornographic video a few times?
>
> A. I would say that the research would suggest that that's highly unlikely.

*Id.* at 155.

Although Krumm did not object at trial, he now argues that the hypothetical question was improper because "the foundation offered by the expert did not support her

conclusion." [6] Appellant's Brief at 20. Specifically, Krumm contends that Dr. Courtney improperly testified that traumatic memories are less subject to manipulation where the false memory research that she relied upon related to non-traumatic memories. The State fails to address this issue. Because Krumm failed to object to the admission of this testimony, we will reverse only if we find fundamental error. The standard for fundamental error is whether the error was so prejudicial to the rights of the defendant that a fair trial was impossible. *Boatright*, 759 N.E.2d at 1042.

Ind. Evidence Rule 705 provides that:

The expert may testify in terms of opinion or inference and give reasons therefor without first testifying to the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

We have held that "[p]ursuant to this rule, the admissibility of expert testimony does not hinge on the expert's disclosure of the facts and reasoning that support his opinion." *Dorsett v. R.L. Carter, Inc.*, 702 N.E.2d 1126, 1128 (Ind.Ct.App.1998), *trans. denied.* Rather, "[t]he lack of facts and reasoning, which may be brought out on cross-examination of the expert, goes to the weight to be given the expert's opinion, not its admissibility." *Id.*

Here, Krumm essentially argues that Dr. Courtney's opinion was not supported by the research that she relied upon. This

---

**6.** Krumm also argues that Dr. Courtney's testimony was improper because she is not a medical doctor and, thus, should not have been permitted to testify as to "medical certainty." However, Krumm fails to demonstrate how he was prejudiced by Dr. Courtney's testimony as to "medical certainty." Consequently, the trial court did not commit

fundamental error by permitting this testimony. *See, e.g., Swartz v. State*, 597 N.E.2d 977, 982 (Ind.Ct.App.1992) (holding that without a showing of prejudice, the defendant had failed to prove the prosecutorial misconduct was fundamental error), *reh'g denied, trans. denied.*

argument goes to the weight to be given to Dr. Courtney's testimony, not the admissibility. The trial court did not abuse its discretion by admitting the testimony. *See, e.g., West v. State,* 755 N.E.2d 173, 181 (Ind.2001) (holding that shoeprint expert's testimony was admissible despite discrepancies between his estimate of the shoe size and the defendant's shoe size and the defendant's argument went to the weight to be given the expert's testimony, not its admissibility). Consequently, Krumm failed to demonstrate fundamental error.

### IV.

■ The next issue is whether the trial court committed fundamental error by limiting the testimony of witnesses regarding how R.S. first made the molestation allegations. This argument pertains to evidence presented to the jury regarding how R.S. informed Virginia of the alleged molestations. The jury was informed that in late December 2000, Jenny called Virginia and informed her that "something may have happened" and advised Virginia to talk to R.S. and K.S. Transcript at 71. Jenny testified that she called Virginia because she "had reason to believe that something might have happened to [Virginia's] children, and [she] thought [Virginia] needed to ask them...." *Id.* at 222. When Virginia questioned R.S. whether something had happened, R.S. said, "yes." *Id.* at 72.

During a pre-trial hearing, the State requested that the jury be permitted to hear evidence that Jenny called Virginia because other children had made sexual abuse allegations against Krumm. Appel-

lant's Appendix at 180. Krumm objected to the State's request to admit the evidence. The trial court ruled that the evidence could not be admitted pursuant to Ind. Evidence Rule 404(b).[7]

Krumm now argues that this testimony gave the jury "an altered version of what actually happened." Appellant's Brief at 25. According to Krumm, this created "a mis-impression on the vital issue of how [R.S.] came to provide her account" and "nullif[ied]" the testimony of Dr. McCabe." *Id.* at 24. Krumm contends that the jury was not permitted to hear any testimony indicating "suggestion or pressure" from Virginia. *Id.* at 25. The State fails to address this issue.

■ Ind. Evidence Rule 103(a) provides that:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and ... In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by a proper offer of proof, or was apparent from the context within which questions were asked.

Krumm did not object at trial to the alleged limitation on the testimony or make an offer of proof regarding the conversation between Virginia and R.S. *See, e.g., Swaynie v. State,* 762 N.E.2d 112, 113 (Ind.2002) ("Rulings on motions in limine are not final decisions and, therefore, do not preserve errors for appeal."). Thus, Krumm must show fundamental error on this claim to be entitled to relief. *See, e.g.,*

---

7. Ind. Evidence Rule 404(b) provides that:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

*Carter*, 754 N.E.2d at 881 n. 8. The standard for fundamental error is whether the error was so prejudicial to the rights of the defendant that a fair trial was impossible. *Boatright*, 759 N.E.2d at 1042.

Krumm fails to demonstrate any error from the trial court's limitation of the testimony. Krumm argues that the trial court abused its discretion because the jury was not permitted to hear any testimony indicating "suggestion or pressure" from Virginia.[8] Appellant's Brief at 25. However, the trial court simply ordered that evidence of prior allegations of molestation by Krumm would be excluded. The trial court did not exclude testimony regarding the questions that Virginia asked R.S. Thus, Krumm could have cross-examined Virginia regarding whether she "suggested" answers to R.S. or whether she "pressured" R.S. Consequently, we fail to see how the trial court abused its discretion when it did not exclude the testimony, and we fail to see how Krumm was prejudiced by the alleged "error."

▮▮▮▮▮ Moreover, to the extent Krumm argues that the trial court abused its discretion by excluding evidence that Jenny informed Virginia of other alleged molestations, Krumm fails to demonstrate that fundamental error occurred. Ind. Evidence Rule 404(b) is "designed to prevent the jury from assessing a defendant's present guilt on the basis of his past propensities." *Hicks v. State*, 690 N.E.2d 215, 218 (Ind.1997). In determining whether to admit evidence under Ind. Evidence Rule 404(b), the trial court must: (1) determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Ind. Evidence Rule 403.[9] *Id.* at 221.

Here, the State sought to admit evidence that two other young girls, who were friends of Jenny's daughters, had made allegations of sexual abuse against Krumm. The State argued that the evidence was admissible to "complete the picture for the jury" and explain why Jenny called Virginia and why Virginia questioned R.S. Krumm objected to the State's request. During a pre-trial hearing, the trial court found that the evidence was inadmissible under Ind. Evidence Rule 404(b). We cannot say that the trial court abused its discretion. The State did not demonstrate that the evidence was admissible for any legitimate purpose, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Moreover, the probative value of evidence that Virginia was aware that two other young girls had made allegations was outweighed by the prejudice from such evidence. We have often concluded pursuant to Ind. Evidence Rule 404(b) that the admission of evidence of prior acts of

---

**8.** As an example of R.S.'s susceptibility to suggestion, Krumm cites R.S.'s testimony that a room in the basement was both a living room and a bedroom. When questioned by defense counsel at trial, R.S. testified that "it changes" and that the living room turns into a bedroom. Transcript at 126. Krumm claims that this supports his allegation that R.S. was susceptible to suggestion and increases the importance of her conversation with Virginia. However, we note that K.S. later testified that the couch in the basement living room converted into a bed. Consequently, we find Krumm's argument unpersuasive.

**9.** Ind. Evidence Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

child molesting or sexual assault are so prejudicial as to be reversible error. *See, e.g., Greenboam v. State,* 766 N.E.2d 1247, 1257 (Ind.Ct.App.2002) (holding that the admission of evidence regarding the defendant's prior molestations was reversible error), *trans. denied; Craun v. State,* 762 N.E.2d 230, 239 (Ind.Ct.App.2002) (holding that evidence of prior alleged child molestation required reversal because the evidence prejudicially impacted the jury and contributed to the guilty verdict), *trans. denied; Udarbe v. State,* 749 N.E.2d 562, 567 (Ind.Ct.App.2001) (holding that the admission of defendant's prior sexual misconduct was not harmless error); *Sundling v. State,* 679 N.E.2d 988, 994 (Ind.Ct.App. 1997) (holding that the admission of evidence that the defendant had molested three other children required reversal of the defendant's convictions), *reh'g denied.* The trial court did not abuse its discretion by excluding the evidence, and Krumm fails to demonstrate fundamental error.

### V.

 The next issue is whether the trial court abused its discretion by limiting the testimony of Krumm's expert psychologist, Dr. McCabe. Dr. McCabe testified as follows:

Q. Doctor, I'm going to use another hypothetical situation. Is [sic] there situations or circumstances where someone's viewing or a child's viewing of a pornography video would at some later date relate to them—relating that it happened to themselves? Did I make myself clear?

A. I don't think so.

* * * * *

Q. Okay. The hypothetical situation is a child views a pornographic video and some time later, years later, they relate incidents of sexual abuse—

[STATE]: Objection, your Honor.

THE COURT: I know we're interrupting, but I'm sustaining the objection because of the incompleteness of your hypothetical. A video of what?

[DEFENSE COUNSEL]: Okay. A pornographic video—

THE COURT: Of?

[DEFENSE COUNSEL]:—of a man and a woman doing sexual acts.

THE COURT: And this is a child in this hypothetical watching—

Q. A child watching adults doing this in the video. Okay? Are there circumstances under which the child can later when relating that event believe or tell that it happened to them instead of just on the video?

A. Well, it's possible. A lot depends on that kind of impact that that video had on that child at that time. It could be a kind of imprinting or one trial learning that was pretty significant and sort of shapes the child's view of sexuality and sexual behavior, and in a later unrelated context when asked to describe or characterize his or her own sexual experience fall back on the images or language inherent in that video for want of other kinds of experience. Is that responsive?

Q. I think so.

THE COURT: Well, not really because in the hypothetical given, Doctor, you weren't told that they were asked to recount their sexual experiences. In fact in that hypothetical there was no suggestion by counsel that they had—

[DEFENSE COUNSEL]: If the Court would allow me to continue questioning, I will—

THE COURT: Well, let's clear up what was a misapprehension of your question.

Q. This is, again, a hypothetical situation where a mother is informed that something sexual may have happened to her children and—

THE COURT: Actually we don't—I need the attorneys here. This is not helping.

[Sidebar conference]

* * * * *

Q. Let's try it again, Doctor. Are there circumstances that you are aware of where a child previously, three, four years ago would have watched a pornographic movie of a man and a woman having sexual act and then at a later date being—and this movie was watched at the house of other people while she's being baby-sat—

A. Excuse me, what—

Q. The movie was observed supposedly at the house of other people, not at her own house, during the time she was being baby-sat. Okay? And the mother after receiving a phone call questions the daughter about anything that might have happened at this house and questions the other children also. Under that scenario—

THE COURT: Separately.

Q. Separately. Under that scenario, is it conceivable that this child would have stored that material and later used it for recall?

A. I would say it's conceivable in the following situation. If it were that the child felt somehow under some duress or pressure to come up with some kind of sexual history but not having one, use the data from the video as a kind of fall back to be able to respond in a satisfying fashion to the presumably pressuring question. Under that

kind of scenario, I think it would be possible.

Q. Could a mother's questioning cause that type of pressure?

A. Well, it sure could. It would depend on how she did it.

Q. Would the fact that the individual might be cognitively impaired have any bearing on the situation?

A. That's different to discern. If the cognitive impairment produces a kind of neediness or psychological dependency, that might intensify the experience of the implicit pressure of the question, yes. But if that was not the situation, then it would probably not be relevant.

Q. What about cognitive impairment on the ability to assimilate the original information of the videotape?

A. Well, if she's cognitively impaired to the point that the videotape didn't really make any sense to her, that reduces the likelihood that that sort of fall back scenario that I suggested operated.

Q. Is it possible under those circumstances for a person to create either a false memory or a false—for lack of a better word—rendition of events?

A. Well, the way I would perceive it, I would see the situation being one in which the child would come to a belief that the recall was in fact an accurate one. In other words—

*Id.* at 348–355.

The State then objected that the witness's response was beyond the scope of the question. In a sidebar conference, the trial court sustained the objection, saying "[i]t's purely hypothetical, purely conjecture. I'm sustaining it, and I'm striking the answer." *Id.* at 355. After the sidebar conference concluded, the trial court told the jury that the objection was sus-

tained and the answer was stricken. The trial court further instructed the jury that it "was not to consider that because it is spinning out from a very specifically limited hypothetical question and now conjecturing that there may have been all kinds of pressures, et cetera, which there's no evidence in that hypothetical to suggest that." *Id.* at 355–356. Krumm objected to the trial court's "improper intervention" in the questioning and the trial court's "apparent anger and impatience." *Id.* at 367. The trial court overruled the objection, stating that it "felt there was very improper questioning and assumptions going on" and that it "ruled accordingly." *Id.*

 Krumm argues that the trial court abused its discretion by limiting Dr. McCabe's testimony and damaging his credibility in front of the jury. As noted above, the trial court is given wide discretion in ruling upon the admissibility of evidence. *Smith v. State*, 730 N.E.2d 705, 708 (Ind.2000), *reh'g denied.* We review a trial court's evidentiary decision for an abuse of discretion and will reverse when the decision is clearly against the logic and effect of the facts and circumstances. *Id.*

 A "defendant in a criminal case has a fundamental right to present exculpatory evidence." *Klagiss v. State*, 585 N.E.2d 674, 679 (Ind.Ct.App.1992), *trans. denied, cert. denied*, 506 U.S. 819, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992). The trial court abuses its discretion if "it prevents a defendant from asking a witness a hypothetical question designed to elicit an exculpatory opinion if the witness has the knowledge, skill, education, or experience to answer the question and if there are facts in evidence to support the hypothetical." *Id.* However, the trial court "does not abuse its discretion in sustaining an objection to a hypothetical which is based on facts not in evidence." *Id.; see also*

*Kubsch v. State*, 784 N.E.2d 905, 926 (Ind. 2003) ("Because it is axiomatic that a ruling or a verdict should not be based upon 'evidence which is conjectural,' ... '[t]o require a witness to answer hypothetical questions based upon facts not established would invite speculation.' " (internal citations omitted)).

The State argues that the trial court did not abuse its discretion because the hypothetical was based upon facts that were not in evidence. We agree. Krumm asked Dr. McCabe, "Is it possible under those circumstances for a person to create either a false memory or a false—for lack of a better word—rendition of events?" Transcript at 355. The "circumstances" referred to in the question involve a "cognitively impaired" child who was under pressure from her mother to "come up with some kind of sexual history." *Id.* at 353–354. As noted above, there was no evidence presented at trial that Virginia had pressured R.S. to come up with a sexual history. *See* supra Issue IV. Thus, the hypothetical was based upon facts not established by the evidence, and Krumm's hypothetical question invited speculation. Consequently, the trial court did not abuse its discretion by striking Dr. McCabe's response.

 Moreover, even assuming that the trial court abused its discretion, the State argues that the exclusion was harmless error. We agree. We will not reverse a conviction "if the State can demonstrate 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " *Spivey v. State*, 761 N.E.2d 831, 836 (Ind.2002). Although Krumm complains that the trial court limited his examination of Dr. McCabe, a review of Dr. McCabe's testimony reveals that he testified without objection that a child could view a pornographic videotape and later recall those views as a personal

experience if the child "felt somehow under some duress or pressure to come up with some kind of sexual history...." Transcript at 353. Dr. McCabe further testified without objection that a mother's questioning could cause that type of pressure. Thus, despite the trial court's limitation of his examination of Dr. McCabe, Krumm was able to present evidence of his defense. Consequently, any error in the limitation of Dr. McCabe's testimony was harmless error. *See, e.g., Spivey*, 761 N.E.2d at 836 (concluding that that the trial court did not err in limiting cross-examination, but even if it did, such error would be harmless beyond a reasonable doubt).

### VI.

 The next issue is whether the trial court abused its discretion in sentencing Krumm. Sentencing decisions rest within the discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Smallwood v. State*, 773 N.E.2d 259, 263 (Ind.2002). An abuse of discretion occurs if "the decision is clearly against the logic and effect of the facts and circumstances." *Pierce v. State*, 705 N.E.2d 173, 175 (Ind.1998). In order for a trial court to impose an enhanced sentence, it must: (1) identify the significant aggravating factors and mitigating factors; (2) relate the specific facts and reasons that the court found to those aggravators and mitigators; and (3) demonstrate that the court has balanced the aggravators with the mitigators. *Veal v. State*, 784 N.E.2d 490, 494 (Ind.2003).

In sentencing Krumm, the trial court found the following mitigators: (1) Krumm's minimal criminal record; (2) Krumm's strong work history; (3) Krumm's supportive family; (4) Krumm's work-related disability; and (5) the impact upon Krumm's two children. The trial court found the following aggravators: (1) violation of entrustment; (2) R.S.'s "very tender young age;" and (3) the fact that R.S. is developmentally disabled. Sentencing Transcript at 24–25. The trial court found the fact that R.S. is developmentally disabled to be the most significant aggravator and found that the aggravators outweighed the mitigators. The trial court sentenced Krumm to forty-eight years for the child molesting as a class A felony conviction and eight years for the child molesting as a class C felony conviction. The trial court ordered that the sentences be served concurrently.

 Krumm argues that the trial court improperly considered violation of entrustment as an aggravating factor because R.S. was entrusted to his wife for babysitting, not Krumm. We disagree. The evidence presented at trial demonstrated that although Jenny was R.S.'s babysitter, Krumm was occasionally at the residence while Jenny was babysitting. Moreover, Krumm babysat R.S. and the other children if Jenny had to go to the grocery store or run other errands. Thus, the trial court did not abuse its discretion by considering the violation of entrustment as an aggravating factor. *See, e.g., Buchanan v. State*, 767 N.E.2d 967, 973 (Ind.2002) (holding that the defendant who was babysitting a five-year-old girl was in a position of trust with victim, which he violated).

 Krumm next argues that the trial court abused its discretion by failing to give proper weight to the fact that "he [had] led a law-abiding life for the vast majority of his life." Appellant's Brief at 27. The trial court found that the fact that Krumm "had no great significant record" was a mitigating factor. Sentencing Transcript at 22. Although a finding of mitigating factors is within the discretion of a trial court, a trial court is not obligated to weigh or credit the mitigating factors as

the defendant requests. *Highbaugh v. State,* 773 N.E.2d 247, 252 (Ind.2002). Consequently, the trial court was not required to give this mitigating factor the weight requested by Krumm. Further, our supreme court has held that a criminal history consisting of no prior felony convictions, one prior misdemeanor marijuana possession conviction and several traffic infractions, most of which had been dismissed, was "not a criminal history that supports a significant aggravating factor" or a factor amounting to "significant mitigating weight." *Robinson v. State,* 775 N.E.2d 316, 321 (Ind.2002). Here, Krumm has a minimal criminal history consisting of a misdemeanor "domestic violence matter." Sentencing Transcript at 22. Krumm's minimal criminal history, while not a significant aggravating factor, is also not a significant mitigating factor. The trial court did not abuse its discretion by failing to assign more weight to this mitigator.

■ Krumm also argues that the trial court abused its discretion by failing to give proper weight to the fact that "the nature and circumstances of the crime demonstrate that there was no weapon, no force, and no violence." Appellant's Brief at 27. Our supreme court noted in *Buchanan,* that:

> While the absence of [brutality] does not in any way lessen the severity of the crimes as such, and thus does not constitute a mitigating factor justifying a reduction or suspension of the presumptive sentence, the presence of aggravated brutality distinguishes the defendants who commit such acts and justifies a substantially aggravated term where it is present. We do not by this observation debase the seriousness of [sexual assault crimes] themselves. Nor do we suggest that the absence of collateral brutality prevents the imposition of an enhanced sentence.

*Buchanan,* 767 N.E.2d at 973 n. 4 (quoting *Fointno v. State,* 487 N.E.2d 140, 148 (Ind. 1986)). Consequently, any alleged lack of weapon, force, or violence does not constitute a significant mitigating factor. The trial court did not abuse its discretion by failing to consider this issue as a mitigator.

■ Lastly, Krumm argues that the mitigating factors should have outweighed the aggravating factors or "at the very least, should balance them." Appellant's Brief at 27. The trial court found the following mitigators: (1) Krumm's minimal criminal record; (2) Krumm's strong work history; (3) Krumm's supportive family; (4) Krumm's work-related disability; and (5) the impact upon Krumm's two children. The trial court found the following aggravators: (1) violation of entrustment; (2) R.S.'s "very tender young age;" and (3) the fact that R.S. is developmentally disabled. Sentencing Transcript at 24–25. The trial court engaged in a lengthy discussion of the aggravators and found the fact that R.S. is developmentally disabled to be the most significant aggravator. The trial court then found that the aggravators outweighed the mitigators. However, the trial court noted that because of some significant mitigators, it was sentencing Krumm to concurrent rather than consecutive terms.

The trial court adequately explained why the aggravators in this case were entitled to great weight and outweighed the mitigators. Further, the trial court took the mitigators into consideration by imposing concurrent sentences rather than consecutive. Given the aggravators and mitigators in this case, we cannot say that the trial court abused its discretion by concluding that the aggravators outweighed the mitigators and enhancing Krumm's sentence. *Jackson v. State,* 697 N.E.2d 53, 56 (Ind.1998) (holding that the trial court did not abuse its discretion by

enhancing the defendant's sentence based on the balance of aggravators and mitigators).

## VII.

The last issue is whether Krumm's sentence is inappropriate. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Krumm argues that his forty-eight year sentence is inappropriate and requests that we reduce his sentence to the presumptive sentence of thirty years.

Krumm argues that his sentence is very close to the maximum and "such maximums should be reserved for the worst offenders with the worst records." Appellant's Brief at 27. Our supreme court has agreed that the maximum possible sentences are generally most appropriate for the worst offenders. *Buchanan*, 767 N.E.2d at 973. However, Krumm did not receive the maximum sentence. The maximum term of imprisonment for a class A felony is fifty years. *See* Ind.Code § 35–50–2–4. The maximum term of imprisonment for a class C felony is eight years. *See* Ind.Code § 35–50–2–6. Thus, Krumm faced a maximum sentence of fifty-eight years if consecutive sentences had been imposed. However, the trial court sentenced Krumm to forty-eight years, ten years less than the maximum sentence.

Our review of the nature of the offense reveals that Krumm took advantage of a position of trust by molesting a nine-year old girl who is mildly mentally handicapped and was entrusted to him and his wife for after school babysitting. Additionally, Krumm molested her over a lengthy period of time. R.S.'s testified that Krumm had kissed her on the breasts underneath her clothes. The kissing was "kind of weird like he was licking." Transcript at 110. Krumm also kissed her mouth and placed his tongue inside of her mouth. R.S. also testified that on more than one occasion, Krumm placed "his man's privacy in [her] mouth." *Id.* at 116. This sometimes happened in the bathroom where Krumm would sit on the toilet and R.S. would kneel in front of him. R.S. testified that it tasted "nasty" and "little white stuff" would come out of Krumm's penis. *Id.* at 117. Krumm "made [R.S.] promise not to tell anyone" about the molestations because "they would be mad." *Id.* at 120.

A review of the character of the offender reveals that Krumm was approximately twenty-eight years old at the time of these offenses. Krumm has a minimal criminal history consisting of a misdemeanor "domestic violence matter." Sentencing Transcript at 22. The trial court also noted that Krumm had a "strong history of work," a supportive family, and a work-related disability. *Id.* at 22–23. It is also the case that the nature of the offenses as just reviewed says much as to the character of the offender. After due consideration of the trial court's decision, we cannot say that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *See, e.g., Sallee v. State*, 785 N.E.2d 645, 654 (Ind.Ct.App. 2003) (concluding that the defendant's sentence was not inappropriate), *trans. denied.*

For the foregoing reasons, we affirm Krumm's convictions and sentences for child molesting as a class A felony and child molesting as a class C felony.

Affirmed.

BARNES and RILEY, JJ., concur.