## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

FILED

Jun 08 2016, 8:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Gary L Griner
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Shaquille Q. Delaney,

*Appellant-Defendant,*

*v.*

State of Indiana,

*Appellee-Plaintiff.*

June 8, 2016

Court of Appeals Case No.
71A03-1601-CR-79

Appeal from the St. Joseph Superior Court

The Hon. Jenny Pitts Manier, Judge
The Hon. Elizabeth A. Hardtke, Magistrate

Trial Court Cause No. 71D08-1507-CM-2577

**Bradford, Judge.**

# Case Summary

[1] On July 18, 2015, Appellant-Defendant Shaquille Delaney and Sharpree Jackson were in a relationship and were watching television at Jackson's house along with Jackson's seven-month-old son, Jackson's friend Shartesha Suggs, and Suggs's two-year-old daughter. Jackson asked Delaney if he knew where her mobile telephone charger was, which he took as accusatory. The incident escalated, and eventually Delaney poked Jackson in the face, scratched her in several places, ripped her shirt, and shoved her. Appellee-Plaintiff the State of Indiana ("the State") charged Delaney with Class A misdemeanor battery, and the trial court found him guilty as charged. Delaney contends that the charging information was insufficient to put him on notice of the charge against him and that the State failed to produce sufficient evidence to sustain his conviction. Because we disagree, we affirm.

## Facts and Procedural History

[2] On July 18, 2015, Jackson lived in her home in Mishawaka and was in a relationship with Delaney. That day, Delaney, Suggs, and Jackson's and Suggs's children were in Jackson's living room watching television when Jackson went upstairs to look for her mobile telephone charger. Jackson could not find the charger, and asked Delaney about it because it was "not the first time things done came up missing." Tr. pp. 9-10. Delaney told Jackson that she needed to go find it and called her an "idiotic b****." Tr. p. 10.

[3] Jackson told Delaney to leave, but Delaney went upstairs instead, apparently locating Jackson's charger. Delaney returned with Jackson's charger and

demanded an apology. Delaney began poking Jackson in the face, provoking her and still demanding an apology. Although Jackson did not fight back, Delaney followed her around the house, "restraining [her] and pulling [her] down and pushing [her.]" Tr. p. 10. At one point, Delaney tried to grab Jackson and ripped her shirt. After a while, Jackson was "all out of breath crying and yelling[.]" Tr. pp. 10-11. When Suggs called police and they arrived, Delaney threatened Jackson, saying, "I know where you stay" and telling her not to say anything. Tr. p. 11. Jackson suffered scratches to her arm, face, and neck and her shirt was bloodied.

[4] On July 20, 2015, the State charged Delany with Class A misdemeanor battery, specifically, that "[o]n or about July 18, 2015, in St. Joseph County, State of Indiana, Shaquille Quentin Delaney did knowingly touch Shapree L. Jackson in a rude, insolent, or angry manner, resulting in bodily injury." Appellant's App. p. 5. On August 8, 2015, a bench trial was conducted, after which the trial court found Delaney guilty as charged. The trial court sentenced Delaney to 180 days of incarceration, with 90 suspended, and ordered that Delaney spend 365 days on probation.

# Discussion and Decision

## I. Specificity of the Charging Information

[5] Indiana Code section 35-34-1-2(a) provides as follows:

> (a) The indictment or information shall be in writing and allege the commission of an offense by:

(1) stating the title of the action and the name of the court in which the indictment or information is filed;

(2) stating the name of the offense in the words of the statute or any other words conveying the same meaning;

(3) citing the statutory provision alleged to have been violated, except that any failure to include such a citation or any error in such a citation does not constitute grounds for reversal of a conviction where the defendant was not otherwise misled as to the nature of the charges against the defendant;

(4) setting forth the nature and elements of the offense charged in plain and concise language without unnecessary repetition;

(5) stating the date of the offense with sufficient particularity to show that the offense was committed within the period of limitations applicable to that offense;

(6) stating the time of the offense as definitely as can be done if time is of the essence of the offense;

(7) stating the place of the offense with sufficient particularity to show that the offense was committed within the jurisdiction of the court where the charge is to be filed;

(8) stating the place of the offense as definitely as can be done if the place is of the essence of the offense; and

(9) stating the name of every defendant, if known, and if not known, by designating the defendant by any name or description by which he can be identified with reasonable certainty.

[6] "The purpose of the charging information is to provide a defendant with notice of the crime of which he is charged so that he is able to prepare a defense." *Gilliland v. State*, 979 N.E.2d 1049, 1060 (Ind. Ct. App. 2012). The State is under no obligation to include detailed factual allegations; rather, a charging information satisfies due process if it "enables an accused, the court, and the jury to determine the crime for which conviction is sought." *Id.* at 1061.

"Errors in the information are fatal only if they mislead the defendant or fail to give him notice of the charge filed against him." *Id.*

As an initial matter, Delaney acknowledges that he did not object to the charging information below and has waived the claim for appellate review. *See Wilhoite v. State*, 7 N.E.3d 350, 352 (Ind. Ct. App. 2014). Delaney, however, seeks to avoid the effects of his waiver by contending that the charging information was so defective as to constitute fundamental error. Fundamental error is "error so egregious that reversal of a criminal conviction is required even if no objection to the error is registered at trial." *Hopkins v. State*, 782 N.E.2d 988, 991 (Ind. 2003). The standard for fundamental error is whether the error was so prejudicial to the rights of the defendant that a fair trial was impossible. *Krumm v. State*, 793 N.E.2d 1170, 1181-82 (Ind. Ct. App. 2003). Fundamental error requires prejudice to the defendant. *Hopkins*, 782 N.E.2d at 991.

Delaney contends that the charging information was defective for failing to specify the precise nature of the touching he committed or the injury that he caused. Such detailed pleading, however, is not required. "[T]o be sufficient, a charging information generally needs only contain a statement of the 'essential facts constituting the offense charged,' as well as the statutory citation, the time and place of the commission of the offense, the identity of the victim (if any), and the weapon used (if any)." *Pavlovich v. State*, 6 N.E.3d 969, 975 (Ind. Ct. App. 2014) (quoting *Laney v. State*, 868 N.E.2d 561, 566-567 (Ind. Ct. App.

2007), *trans. denied.*).  "The State is not required to include detailed factual allegations in a charging information."  *Laney*, 868 N.E.2d at 567.

[9] We conclude that the charging information in this case was not so deficient as to constitute error, much less fundamental error.  The charging information included all of the statutory elements of Class A misdemeanor battery, the time and place of the alleged commission, the identities of the defendant and victim, the relevant statutory citations, and a list of potential witnesses.  Delaney cites to no authority that more specificity is required, and our research has uncovered none.  Delaney has failed to establish fundamental error in this regard.  *See, e.g.*, *Moody v. State*, 448 N.E.2d 660, 662 (Ind. 1983) (concluding that charging information was adequately specific even though it did not "disclose either the bodily injury suffered by [the victim] or the specific conduct on appellant's part that led to the injury").

## II.  Sufficiency of the Evidence

[10] Delaney contends that the State failed to produce sufficient evidence to sustain his convictions for battery, specifically that the State did not establish that he "knowingly" touched Jackson in a rude, insolent, or angry manner.  "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so."  Ind. Code § 35-41-2-2(b).  When reviewing the sufficiency of the evidence, we neither weigh the evidence nor resolve questions of credibility.  *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995).  We look only to the evidence of probative value and the reasonable

inferences to be drawn therefrom which support the verdict. *Id*. If from that viewpoint there is evidence of probative value from which a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt, we will affirm the conviction. *Spangler v. State*, 607 N.E.2d 720, 724 (Ind. 1993).

[11] Delaney argues that the only reasonable inference that could be drawn from the evidence presented at trial was that Jackson was the aggressor and that any touching Delaney may have done was incidental or not intended to cause injury. While expressing no opinion on whether the trial court *could* have found that Jackson was the aggressor, it did not, and the only question before us is whether that finding is supported by the record. We conclude that it is.

[12] Jackson testified that Delaney became angry when asked about Jackson's telephone charger and, when asked to leave, started poking Jackson in the face while following her. Jackson testified that she did not fight back while Delaney poked, scratched, pulled, and pushed her and ripped her shirt. Suggs, the State's other witness, corroborated Jackson's version of events, testifying that Delaney was pushing and shoving Jackson and "got in her face[.]" Tr. p. 39. Suggs also testified that although she did not actually see Delaney "poking" Jackson in the face, she did see him "pointing." Tr. p. 41. Suggs did not see Jackson put her hands on Delaney. Delaney testified that Jackson became angry when he denied taking her telephone charger and scratched him on the arm with a wrist band. Delaney testified that this was the extent of the physical conflict between him and Jackson on July 18, 2015. The trial court, however,

was not required to credit this testimony and did not. Delaney's argument amounts to nothing more than an invitation to reweigh the evidence, which we may not do. *See Jordan*, 656 N.E.2d at 817.

[13] The judgment of the trial court is affirmed.

Bailey, J., and Altice, J., concur.