# FOR PUBLICATION



FILED
Dec 10 2012, 10:37 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**CRAIG V. BRAJE**
**ELIZABETH A. FLYNN**
Michigan City, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN McLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| EDWARD GILLILAND, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 46A03-1202-CR-97 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

### INTERLOCUTORY APPEAL FROM THE LAPORTE SUPERIOR COURT
The Honorable Jennifer L. Koethe, Judge
Cause No. 46D03-1109-CM-941

**December 10, 2012**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

A male high school girls volleyball coach gave foot rubs to and rubbed lotion on the backs of some of his players. The players' parents reported these and other activities to the school corporation's athletic director, Edward Gilliland, who documented them as "inappropriate behavior" in the coach's personnel file. The coach continued to engage in such behavior and was forced to resign in October 2008. Local law enforcement authorities conducted an investigation and eventually charged the coach with committing unspecified "sex offenses" against one of his former players, who had joined the team in August 2007. When questioned by police on November 21, 2008, Gilliland denied knowing about any "alleged misconduct" between the coach and the player.

The Indiana State Police conducted its own investigation and submitted a report to the prosecutor's office in October 2010. At a probable cause hearing in September 2011, the lead investigator testified that Gilliland knew that the coach had given foot rubs and back rubs to his players but did not testify that Gilliland knew about any sexual activity between the coach and the aforementioned player. After the hearing the State charged Gilliland with two counts of failure to report child abuse or neglect, a class B misdemeanor. The charging information alleges that between August 2007 and October 2008, Gilliland had reason to believe that the player was a victim of child abuse or neglect and failed to report it to the proper authorities; the charging information does not specify the alleged abuse or neglect that Gilliland failed to report. The charging information further alleges that Gilliland concealed his offenses, thereby tolling the two-year statute of limitations, and that the State could not

2

have discovered sufficient evidence by exercise of due diligence to charge him before October 2010, less than one year before the charges were filed.

Gilliland filed a motion to dismiss, asserting that the prosecution was barred by the statute of limitations, that he had not engaged in concealment, and that the State had failed to exercise due diligence. At the hearing on the motion to dismiss, he also argued that the charging information failed to state facts sufficient to constitute an offense, apprise him of the charges against him, and allow him to prepare a defense. The trial court denied Gilliland's motion to dismiss but ruled that any concealment did not begin until November 21, 2008, and thus any offense committed prior to October 5, 2007, would be outside the statute of limitations. As such, the trial court gave the State an opportunity to amend the charging information accordingly.

On appeal, Gilliland renews the arguments that he made below and suggests that he had no duty to report child abuse or neglect because he had no reason to believe that the coach and the player engaged in sexual activity. We conclude that Gilliland concealed his offenses from the very beginning, thereby tolling the statute of limitations, and that the State could not have discovered sufficient evidence by exercise of due diligence to charge him prior to October 2010. Thus, we agree with the trial court that the charges were timely filed, but we conclude that any offense committed prior to October 5, 2007, would not be outside the statute of limitations and therefore the State does not have to amend the charging information in that respect.

We also conclude that the charging information and the testimony from the probable cause hearing, when taken together and accepted as true, contain facts sufficient to constitute the charged offenses because child abuse or neglect need not involve sexual activity under Indiana law. We further conclude that those facts are sufficient to apprise Gilliland of the charges against him and allow him to prepare a defense. Therefore, we affirm in part and reverse in part and remand for further proceedings.

## Facts and Procedural History

The relevant evidence presented at the probable cause hearing indicates that Gilliland was the athletic director for LaPorte Community School Corporation ("the Corporation") and was stationed at LaPorte High School. Robert Ashcraft was the high school's girls "junior volleyball coach." Appellant's App. at 50. On August 1, 2007, fifteen-year-old K.T. became a member of Ashcraft's team. According to Indiana State Police Detective Michael Robinson, some of the team members' parents told Gilliland that Ashcraft had engaged in activities with team members such as "foot rubs; lotion being rubbed on backs; some textings; hanging out with the girls – specifically [K.T.] – before school, by himself." *Id*. at 58. Gilliland documented this behavior in Ashcraft's personnel file and in August 2007 gave "a list to Mr. Ashcraft of things that were not appropriate behavior as a coach in regards to the players." *Id*. at 52. Nevertheless, Ashcraft continued to engage in behavior that Gilliland and head volleyball coach Marybeth Lebo deemed "inappropriate," *id*. at 58 and 59, and they documented that behavior in Ashcraft's personnel file. K.T.'s name was mentioned "a couple of times" in the file. *Id*. at 60.

4

At some point, Ashcraft, who was over forty years old, committed "several sex offenses" with K.T., who turned sixteen on June 21, 2008.[1] *Id*. at 50. The record before us does not disclose the specific nature of those offenses, which ultimately resulted in Ashcraft's prosecution and conviction.[2] On October 28, 2008, Ashcraft submitted a resignation letter that had been prepared by Gilliland and Lebo; the letter indicated that Ashcraft's resignation was due to "some type of coaching problem" but did not mention the behavior documented in his personnel file. *Id*. at 63.

In November 2008, LaPorte City Police Department detectives interviewed Gilliland about Ashcraft's "alleged misconduct" with K.T. *Id*. at 54. Gilliland replied that "he had no knowledge whatsoever of – or any rumors of that being the reason why Mr. Ashcraft was terminated or resigned." *Id*.

In January 2010, the Indiana State Police began investigating Gilliland, Lebo, and the Corporation based on "information that came to light" during its investigation of Ashcraft that "there was a possibility that the [Corporation] and some of the employees may have known about the alleged misconduct" between Ashcraft and K.T. *Id*. at 50. Detective Robinson completed his report on the investigation on October 22, 2010, and submitted it to the LaPorte County prosecutor's office the next day.

---

[1] At the hearing on Gilliland's motion to dismiss, his counsel said, "In the discovery provided to me by the State of Indiana, and the only discovery provided to me by the State of Indiana, says that [K.T.] alleged that the sexual contexts of the relationship occurred beginning in May of 2008." Tr. at 11.

[2] Gilliland asserts that Ashcraft was "charged with felony sexual misconduct with a minor and felony child seduction." Appellant's Br. at 3 (citing Appellant's App. at 50). The cited page comes from the transcript of the probable cause hearing, which contains no mention of those crimes.

5

A probable cause hearing was held on September 6, 2011, and later that day the State filed an information charging Gilliland with two counts of class B misdemeanor failure to report child abuse or neglect based on alleged violations of Indiana Code Sections 31-33-5-1 and 31-33-5-2.[3] Indiana Code Section 31-33-5-1 states, "In addition to any other duty to report arising under this article, an individual who has reason to believe that a child is a victim of child abuse or neglect shall make a report as required by this article." The terms "reason to believe" and "victim of child abuse or neglect" are defined by statute and will be addressed in greater detail below. Indiana Code Section 31-33-5-2 states,

> (a) If an individual is required to make a report under this article in the individual's capacity as a member of the staff of a medical or other public or private institution, school, facility, or agency, the individual shall immediately notify the individual in charge of the institution, school, facility, or agency or the designated agent of the individual in charge of the institution, school, facility, or agency.
>
> (b) An individual notified under subsection (a) shall report or cause a report to be made.

A person who has a duty under Indiana Code Chapter 31-33-5 "to report that a child may be a victim of child abuse or neglect shall immediately make an oral report to: (1) the [Department of Child Services]; or (2) the local law enforcement agency." Ind. Code § 31-33-5-4.

Indiana Code Section 31-33-22-1 states,

> (a) A person who knowingly fails to make a report required by IC 31-33-5-1 commits a Class B misdemeanor.

---

[3] The State also filed charges against Lebo and the Corporation. Gilliland's counsel have included a copy of the charging informations against Lebo and the Corporation and a copy of the transcript of the hearing on the Corporation's motion to dismiss in the appellant's appendix. We admonish Gilliland's counsel to refrain from submitting (and citing to) such extra-record material in future appeals.

6

(b) A person who knowingly fails to make a report required by IC 31-33-5-2 commits a Class B misdemeanor. This penalty is in addition to the penalty imposed by subsection (a).

The prosecution of a misdemeanor offense is barred unless it is commenced within two years after the commission of the offense. Ind. Code § 35-41-4-2(a). "The period within which a prosecution must be commenced does not include any period in which …the accused person conceals evidence of the offense, and evidence sufficient to charge the person with that offense is unknown to the prosecuting authority and could not have been discovered by that authority by exercise of due diligence." Ind. Code § 35-41-4-2(h)(2).

Count I of the charging information against Gilliland alleges a violation of Indiana Code Section 31-33-5-1 and reads in pertinent part as follows:

[O]n [or] between August 1st, 2007 and October 28th, 2008, Edward L. Gilliland had reason to believe that minor child K.T. was a victim of child abuse or neglect and failed to report such child abuse or neglect to law enforcement or the department of child services and such offense was concealed by the failure to make such report for the duration of the charges and by lying to officers on 11/21/08, and further that the State did not have evidence sufficient to file charges until an investigative report was received after October 22, 2010, and could not have discovered sufficient evidence through due diligence.

Appellant's App. at 11. Count II alleges a violation of Indiana Code Section 31-33-5-2 and reads in pertinent part as follows:

[O]n or between August 1st, 2007 and October 28th, 2008, Edward L. Gilliland while employed as the athletic director for LaPorte High School had reason to believe that minor child K.T. was a victim of child abuse or neglect and failed to report such child abuse or neglect to the individual in charge of the school or the individual's designated agent and such offense was concealed by the failure to make such report for the duration of the charges and by lying to officers on 11/21/08, and further that the State did not have evidence sufficient to file charges until an investigative report was received after

7

October 22, 2010, and could not have discovered sufficient evidence through due diligence.

*Id*. at 13.

On September 29, 2011, Gilliland filed a written motion to dismiss the charges on the basis that the two-year statute of limitations for prosecution of a misdemeanor began to run, at the latest, on October 28, 2008, and expired on October 28, 2010, almost a year before the charges were filed. In his motion, Gilliland further asserted that "[t]here is no evidence of concealment of the crime that would toll the statute of limitations period and, at most, within the charging Information the State alleges acts of concealment of the underlying crime of child abuse which is a charge that has not been brought against [Gilliland]." *Id*. at 23-24. Finally, Gilliland asserted that

> [t]he State failed to prosecute this matter in a timely manner because the Prosecuting authority could have discovered the crime by the exercise of due diligence, to-wit: the State, through the prosecuting attorney's office, was in possession of the investigative report before the expiration of the two year statute of limitations period.

*Id*. at 24.

On January 23, 2012, the trial court held a hearing on Gilliland's motion to dismiss.[4] At the hearing, in addition to addressing the statute of limitations issues raised in his motion, Gilliland argued that the charging information was defective because it was insufficiently specific and failed to state facts constituting an offense. The State observed that Gilliland

---

[4] Lebo also filed a motion to dismiss, and the hearing on her motion was consolidated with the hearing on Gilliland's motion. The trial court denied Lebo's motion, and that ruling was recently affirmed by another panel of this Court. *See Lebo v. State*, No. 46A05-1202-CR-104 (Ind. Ct. App. Nov. 16, 2012).

8

had not raised those additional arguments in his written motion to dismiss but made no formal objection and responded to them at length. Tr. at 35.[5]

On February 7, 2012, the trial court issued an order that reads in pertinent part as follows:

> 7.    In the present case, the State alleges concealment in both counts charged against [Gilliland] as follows: "and such offense was concealed by the failure to make such report for the duration of the charges and by lying to officers on 11/21/08, and further that the State did not have evidence sufficient to file charges until an investigative report was received after October 22, 2010, and could not have discovered sufficient evidence through due diligence." Concealment has been interpreted by the courts to mean that the accused must have committed some positive act unconnected with the accused being the perpetrator of the crime calculated to prevent the discovery of the fact that an offense has been committed. *State vs. Holmes, 393 N.E.2d 242, 244 (1979).* Here, the State alleges failure to make a report during the duration of the charges and that [Gilliland] lied to officers on November 21, 2008. Clearly, the failure to make a report is an element of the charge that cannot constitute concealment. The allegation of whether [Gilliland] lied to officers on November 21, 2008 and whether such a lie would constitute concealment is a question of fact. "…Concealment is a 'fact-intensive issue' when the State relies on this exception, it must plead the circumstances of the concealment exception in the information so that the 'defendant is apprised of the facts upon which the State intends to rely and may be prepared to meet that proof at trial.'" Reeves vs. State, 938 N.E.2d 10, 17 (Ind. Ct. App. 2010). Whether the State's allegation in the charging information that [Gilliland] lied to officers on November 21, 2008 is sufficient to establish concealment to toll the statute of limitations is a fact to be determined and is the State's burden at trial. Similarly, the Court finds that the question of whether the State of Indiana exercised due diligence in filing the charges against [Gilliland] on September 6, 2011, even though the investigation was complete and in the State's possession on October 28, 2010 is a question of fact to be determined by a jury at trial. [Gilliland's] motion to dismiss on the concealment and due diligence arguments is DENIED.

---

[5] Gilliland's counsel has included the entire forty-six-page transcript of the hearing in the appellant's appendix in violation of Indiana Appellate Rule 50(F), which provides, "Because the Transcript is transmitted to the Court on Appeal pursuant to Rule 12(B), parties should not reproduce any portion of the Transcript in the Appendix."

8. Although the issues of concealment and due diligence are fact intensive issues that will be decided by a jury at trial, the State is still required to show … in the charging information that the offenses alleged were committed within the period of limitations applicable to that offense in accordance with Indiana Code 35-34-1-2(a)(5).… [I]f concealment is shown as alleged by the State on November 21, 2008, the statute of limitations would be stayed or tolled from November 21, 2008 until October 23, 2010. However, the State alleges in its charging information that the offenses were committed by [Gilliland] on or between August 1, 2007 and October 28, 2008. Any offense alleged by the State of Indiana prior to October 5, 2007, even assuming the statute of limitations was stayed because of concealment between November 21, 2008 and October 28, 2010, would be beyond the statute of limitations. (October 5, 2007 to November 21, 2007 = 47 days, November 21, 2007 to November 21, 2008 = 365, and October 23, 2010 to September 6, 2011 = 318 for a total of 730 days.) Therefore, in accordance with Indiana Code 35-34-1-4(a)(8), (d)(3) and (e), the State shall have 72 hours from the date of this Order to amend the charging information to comply with the Statute of Limitations, otherwise these charges shall be dismissed.

9. The remaining argument raised by [Gilliland] through counsel is whether the State has failed to allege on the face of the charging information[] that [Gilliland] committed a crime with sufficient specificity and that the facts stated do not constitute a crime. A charging information must state the nature and elements of a charge in plain and concise language with sufficient facts and circumstances to inform an accused of the particular offense for which he or she is charged. State v. Laker, 939 N.E.2d 1111 (Ind. Ct. App. 2010). When a statute defines an offense generally, the information must specify the facts and circumstances which inform the accused of the particular offense he allegedly committed. *Id.* "But as our Supreme Court ha[s] indicated, even where a charging instrument may lack appropriate factual detail, additional materials such as the probable cause affidavit supporting the charging instrument may be taken into account in assessing whether a defendant has been apprised of the charges against him." *Id., citing Patterson v. State, 495 N.E.2d 714, 719 (1986).*

10. …. Nowhere in the charging information[] does it allege what facts support the element that Edward Gilliland had a reason to believe that the minor child K.T. was a victim of child abuse or neglect that would cause a reporting requirement.… However, a probable cause hearing was held on September 6, 2011 and the Court may take into account the testimony presented and provided in a transcript to [Gilliland] in assessing whether [Gilliland] has been apprised of the charges filed against him as required by

10

statute. In the probable cause hearing, testimony by Detective Robinson, as indicated on page 10 of the transcript referring to the actions of Bob Ashcraft, an assistant volleyball coach, Robinson indicated that:

> "there was instances where some of the parents went to Mr. Gilliland and stated things like there was some foot rubs; lotion being rubbed on backs; some textings; hanging out with the girls – specifically the victim in the case – before school, by himself. All of these instances were documented by Mr. Gilliland as inappropriate behavior, in his own words, in the personnel – in Bob Ashcraft's personnel file, that he specifically laid out as basically rules that Mr. Ashcraft was supposed to follow from this point forward."

11. Counsel for [Gilliland] has argued to the Court that the above listed allegations testified to by Detective Robinson during the probable cause hearing are allegations that even if true would not constitute a crime. In consideration of [Gilliland's] argument, it is important to keep in mind the purpose of the Failure of Duty statute which has been spelled out by the legislature in Indiana Code 31-33-1-1 as follows:

The purpose of this article is to:

> (1) encourage effective reporting of suspected or known incidents of child abuse or neglect;
> (2) provide effective child services to quickly investigate reports of child abuse or neglect;
> (3) provide protection for an abused or a neglected child from further abuse or neglect;
> (4) provide rehabilitative services for an abused or a neglected child and the child's parent, guardian, or custodian; and
> (5) establish a centralized statewide child abuse registry and an automated child protection system.

The reporting requirements under Indiana Code 31-33-5-1 place[] an affirmative duty on an individual who has a reason to believe that a child is a victim of child abuse or neglect to make a report. The legislature has further defined, "a reason to believe" under Indiana Code 31-9-2-101 as: "'Reason to believe', for purposes of IC 31-33, means evidence that, if presented to individuals of similar background and training, would cause the individuals to believe that a child was abused or neglected."

11

12.     The purpose of the above statutes [is] clearly to encourage reporting of suspected abuse or neglect.  The question of whether the facts as alleged by the State during the probable cause hearing are sufficient to establish beyond a reasonable doubt that [Gilliland] had a reason to believe the child was a victim of child abuse or neglect, which required a duty to report, and whether those facts are sufficient to constitute the offenses as charged, are ultimately questions of fact that the trier of fact or a jury would be required to decide. The Court finds that the charging information together with the oral testimony presented in the oral probable cause hearing has sufficient facts and circumstances to inform [Gilliland] of the particular offenses for which he is charged in order to allow him to adequately prepare a defense.  Therefore, [Gilliland's] Motion to Dismiss is denied.

WHEREFORE IT IS ORDERED, ADJUDGED AND DECREED that [Gilliland's] Motion to Dismiss is DENIED.  IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the State of Indiana is given until 4 p.m. on February 10, 2012 in order to file an amendment eliminating the time frame which falls outside the statute of limitations in the charges filed against [Gilliland].  Otherwise the charges will be dismissed in accordance with Indiana Code 35-34-1-4(c).

Appellant's App. at 7-10.  This discretionary interlocutory appeal ensued.

**Discussion and Decision**

Gilliland contends that the trial court erred in denying his motion to dismiss.  Our standard of review is well settled.

We review a trial court's denial of a motion to dismiss for an abuse of discretion.  An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances or when the trial court has misinterpreted the law.  We may affirm a trial court's judgment if it is sustainable on any basis in the record.

*Estrada v. State*, 969 N.E.2d 1032, 1038 (Ind. Ct. App. 2012) (citations omitted), *trans. denied*.

We further observe that,

[a]s a general rule, when a defendant files a motion to dismiss an information, the facts alleged in the information are to be taken as true. Questions of fact to be decided at trial or facts constituting a defense are not properly raised by a motion to dismiss. A hearing on a motion to dismiss is not a trial of the defendant on the offense charged.

*Delagrange v. State*, 951 N.E.2d 593, 594-95 (Ind. Ct. App. 2011) (citations omitted), *trans. denied*.

On appeal, Gilliland challenges both the sufficiency and the timeliness of the charging information. Because the timeliness issue is potentially dispositive, we address it first.

### *I. Statute of Limitations/Concealment/Due Diligence*

Indiana Code Section 35-34-1-4(a)(8) states that, upon motion of the defendant, the court may dismiss an information if "[t]he prosecution is untimely brought." In *Sloan v. State*, 947 N.E.2d 917 (Ind. 2011), our supreme court explained,

For misdemeanors and most classes of felonies, Indiana has enacted statutes of limitations, which permit the commencement of criminal proceedings against defendants only within a fixed period of time from the commission of a crime. These statutes' primary purpose is to protect defendants from the prejudice that a delay in prosecution could bring, such as fading memories and stale evidence. They also strike a balance between an individual's interest in repose and the State's interest in having sufficient time to investigate and build its case.

*Id.* at 920 (citations, quotation marks, and brackets omitted). "It is the State's burden to establish that the crime charged was committed within the statute of limitations." *Atkins v. State*, 437 N.E.2d 114, 117 (Ind. Ct. App. 1982), *cert. denied* (1983).

As previously mentioned, the misdemeanor offenses at issue have a two-year statute of limitations. Ind. Code § 35-41-4-2(a)(2). Both offenses involve the failure to report suspected child abuse or neglect. Once a person has reason to believe that a child is a victim

13

of child abuse or neglect, that person must "immediately" make a report to the proper authorities. Ind. Code §§ 31-33-5-2(a),[6] 31-33-5-4. Gilliland contends that "[t]he statute of limitations for prosecuting 'failure to report child abuse or neglect' begins to run when the person charged with the offense fails to 'immediately' report abuse or neglect." Appellant's Br. at 15 (quoting Ind. Code §§ 31-33-22-1 and 31-33-5-4). According to Gilliland, "the statute of limitations began to run, at the latest, on October 28, 2008. Thus, the State was required to file the charging Informations no later than October 28, 2010." *Id*. at 15-16.

The State characterizes failure to report child abuse or neglect as a continuing offense, arguing that "'immediately' defines when the duty to report arises, not when a violation of that duty terminates." Appellee's Br. at 19. The State points out that "[t]he Indiana Code avoids setting any time limit on an individual's duty to report child abuse or neglect" and that a person is relieved of that duty only if "'a report has already been made to the best of the individual's belief.'" *Id*. at 19, 20 (quoting Ind. Code § 31-33-5-3). Absent any evidence of such belief on Gilliland's part, says the State, "his offense continued until the filing of the information because he had not reported Ashcraft's conduct." *Id*. at 22.[7]

---

[6] Indiana Code Section 31-33-5-2(a) reads in pertinent part, "If an individual is required to make a report under this article in the individual's capacity as a member of the staff of a … school …, the individual shall immediately notify the individual in charge of the … school … or the designated agent of the individual in charge of the … school …." Gilliland makes no argument about whether he was a member of the staff of LaPorte High School or whether he was required to make a report in his individual capacity as a member of the staff.

[7] At the hearing on the motion to dismiss, Gilliland's counsel stated, "There is in the discovery clearly an indication that the parties [presumably Gilliland and Lebo] knew a report had been made [to the Department of Child Services regarding Ashcraft's conduct with K.T.], because they were having conversations." Tr. at 15. There is no indication, however, that the report was made before Gilliland would have had reason to believe that K.T. was a victim of child abuse or neglect.

14

We need not decide whether failure to report child abuse or neglect is a continuing offense because, even assuming that Gilliland committed his offenses as early as August 1, 2007, his concealment of them tolled the statute of limitations from that date until October 23, 2010, at the earliest. To reiterate, Indiana Code Section 35-41-4-2(h) states in pertinent part, "The period within which a prosecution must be commenced does not include any period in which … the accused person conceals evidence of the offense, and evidence sufficient to charge the person with that offense is unknown to the prosecuting authority and could not have been discovered by that authority by exercise of due diligence." Ind. Code § 35-41-4-2(h)(2). Gilliland's duty to report child abuse or neglect allegedly arose sometime between August 1, 2007, when K.T. joined the volleyball team, and October 28, 2008, when Ashcraft resigned from the team.[8] Gilliland never made a report and thereby concealed the fact that he had reason to believe that K.T. was a victim of child abuse or neglect and thus had a duty to report that abuse or neglect.

Gilliland asserts that concealment "must be a positive act performed by the defendant calculated to prevent discovery of the fact that a crime has been committed." Appellant's Br. at 18 (citing *Kifer v. State*, 740 N.E.2d 586, 588 (Ind. Ct. App. 2000)). Assuming that *Kifer* remains good law on this point, we conclude that Gilliland performed a positive act of concealment calculated to prevent discovery of the fact that a crime had been committed by

---

[8] Gilliland suggests that "child abuse" must be sexual activity or involve the fondling or touching of a sexual organ, but we disagree for reasons that will be explained later in this opinion.

15

remaining silent when he had a legal duty to speak.[9] The trial court concluded that Gilliland did not engage in concealment until November 21, 2008, when he told detectives that he had no knowledge of any "alleged misconduct" between Ashcraft and K.T. Appellant's App. at 54. This overlooks the fact that Gilliland had a duty to report child abuse or neglect immediately after he had reason to believe that it occurred and failed to do so.

Based on the foregoing, we conclude that Gilliland concealed evidence of his alleged offenses from the very beginning and that evidence sufficient to charge him with those offenses was unknown to the LaPorte County prosecutor's office until it received the Indiana State Police report on October 23, 2010, at the earliest.[10] Gilliland does not contend that the prosecutor could have discovered that evidence any earlier by exercise of due diligence. As such, the two-year statute of limitations did not start running until that date, at the earliest.

---

[9] Gilliland also relies on *Kifer* in asserting that "concealment of guilt is not concealment of the fact that an offense has been committed." Appellant's Br. at 20 (citing *Kifer*, 740 N.E.2d at 587). In *Sloan*, our supreme court observed that *Kifer* and other cases had failed to account for amendments to the periods of limitation statute in analyzing concealment:

> Indiana Code section 35-41-4-2(h)(2) uses the language "conceals evidence of the offense," which is seemingly broader than its predecessor's language, "conceals the fact that the offense has been committed." *See* Ind. Code § 35-1-3-5 (1976). We note that decisions from the Court of Appeals have not assigned significance to this change and continue to analyze concealment as courts did under the now-defunct section 35-1-3-5: to constitute concealment, "there must be a positive act performed by the defendant calculated to prevent discovery of the fact that a crime has been committed." *Sipe v. State*, 797 N.E.2d 336, 340 (Ind. Ct. App. 2003); *e.g.*, *Kifer v. State*, 740 N.E.2d 586, 588 (Ind. Ct. App. 2000). It is arguable that the new language applies to concealment of any evidence, including evidence of guilt, and thus would toll the statute of limitations in any crime in which a defendant tries to avoid apprehension. Because concealment is not an issue in this case, we leave this question for another day.

947 N.E.2d at 922 n.8. Because Gilliland concealed the fact that the offenses at issue had been committed, and not just evidence of his guilt, we also leave this question for another day.

[10] It may have taken the prosecutor's office a matter of days or even weeks to assess Gilliland's criminal liability based on the report, which does not appear in the record before us.

The State charged Gilliland on September 6, 2011, well before the statute of limitations expired. Thus, we conclude that the trial court did not abuse its discretion in denying Gilliland's motion to dismiss the charges as untimely. That said, we respectfully disagree with the trial court's determination that any offense alleged prior to October 5, 2007, would be outside the statute of limitations, and therefore we reverse the trial court's ruling on that point and hold that the State need not amend the charging information in that respect.

## II. *Sufficiency of Charging Information*

Having determined that the charges were timely filed, we now turn to Gilliland's arguments regarding the sufficiency of the charging information. The State argues that Gilliland has waived these arguments by failing to include them in his written motion to dismiss and raising them for the first time orally at the dismissal hearing. *See* Appellee's Br. at 6-7 (citing Ind. Code § 35-34-1-8, which states, "A motion to dismiss an indictment or information under section 4 of this chapter shall be in writing."). We agree with Gilliland that the State has waived its waiver argument by failing to object to his sufficiency arguments at the dismissal hearing. *See Hoemig v. State*, 522 N.E.2d 392, 400-01 (Ind. Ct. App. 1988) ("The failure to raise a timely and specific objection at trial constitutes a waiver of any error on appeal."). Therefore, we address the merits of Gilliland's arguments regarding the sufficiency of the charging information.

"The purpose of the charging information is to provide a defendant with notice of the crime of which he is charged so that he is able to prepare a defense." *State v. Laker*, 939 N.E.2d 1111, 1113 (Ind. Ct. App. 2010), *trans. denied* (2011). Indiana Code Section 35-34-

17

1-2(a) states in pertinent part that a charging information must be in writing and allege the

commission of an offense by:

> (2) stating the name of the offense in the words of the statute or any other words conveying the same meaning;
>
> (3) citing the statutory provision alleged to have been violated, except that any failure to include such a citation or any error in such a citation does not constitute grounds for reversal of a conviction where the defendant was not otherwise misled as to the nature of the charges against the defendant;[11]
>
> (4) setting forth the nature and elements of the offense charged in plain and concise language without unnecessary repetition;
>
> (5) stating the date of the offense with sufficient particularity to show that the offense was committed within the period of limitations applicable to that offense; [and]
>
> (6) stating the time of the offense as definitely as can be done if time is of the essence of the offense[.]

"The State is not required to include detailed factual allegations in a charging

information." *Laney v. State*, 868 N.E.2d 561, 567 (Ind. Ct. App. 2007), *trans. denied.* "An

information that enables an accused, the court, and the jury to determine the crime for which

conviction is sought satisfies due process. Errors in the information are fatal only if they

mislead the defendant or fail to give him notice of the charge filed against him." *Dickenson*

*v. State*, 835 N.E.2d 542, 550 (Ind. Ct. App. 2005) (citations and quotation marks omitted),

*trans. denied.* "[W]here a charging instrument may lack appropriate factual detail, additional

materials such as the probable cause affidavit supporting the charging instrument may be

---

[11] The charging information mistakenly cites Indiana Code Sections 31-35-5-1 and 31-35-5-2 instead of Indiana Code Sections 31-33-5-1 and 31-33-5-2. Gilliland does not claim that he was misled by this.

18

taken into account in assessing whether a defendant has been apprised of the charges against him." *Laker*, 939 N.E.2d at 1113. The probable cause affidavit is not in the record before us, and therefore we follow the trial court's and the parties' lead in considering the testimony from the probable cause hearing.

To provide some context for Gilliland's sufficiency arguments, we first review the statutory definitions relevant to whether he had a reason to believe that K.T. was the victim of child abuse or neglect. For purposes of Indiana Code Article 31-33, "reason to believe" is defined as "evidence that, if presented to individuals of similar background and training, would cause the individuals to believe that a child was abused or neglected." Ind. Code § 31-9-2-101. The definition of "victim of child abuse or neglect" is considerably more complex. Indiana Code Section 31-9-2-133 provides in pertinent part,

> (a) "Victim of child abuse or neglect", for purposes of … IC 31-33, refers to a child as described in:
>
> > (1) IC 31-34-1-1 through IC 31-34-1-5;
> > (2) IC 31-34-1-10; or
> > (3) IC 31-34-1-11;
>
> regardless of whether the child needs care, treatment, rehabilitation, or the coercive intervention of a court.

Of relevance here is paragraph (a)(1) of the statute, which pertains to a child described in Indiana Code Sections 31-34-1-1 through 31-34-1-5, which describe various circumstances under which a child is a child in need of services ("CHINS"). Indiana Code Section 31-34-1-3(a) says,

> A child is a child in need of services if, before the child becomes eighteen (18) years of age:

19

(1) the child is the victim of a sex offense under:

(A) IC 35-42-4-1 [rape];
(B) IC 35-42-4-2 [criminal deviate conduct[12]];
(C) IC 35-42-4-3 [child molesting];
(D) IC 35-42-4-4 [child exploitation];
(E) IC 35-42-4-7 [child seduction];
(F) IC 35-42-4-9 [sexual misconduct with a minor];
(G) IC 35-45-4-1 [public indecency/indecent exposure];
(H) IC 35-45-4-2 [prostitution];
(I) IC 35-46-1-3 [incest]; or
(J) the law of another jurisdiction, including a military court, that is substantially equivalent to any of the offenses listed in clauses (A) through (I); and

(2) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and
(B) is unlikely to be provided or accepted without the coercive intervention of the court.

Gilliland's overarching contention is that the facts alleged in the charging information and the testimony from the probable cause hearing, "even when taken together and accepted as true, woefully fail to establish" that he had reason to believe that K.T. was a victim of child abuse or neglect. Appellant's Br. at 12. More specifically, Gilliland contends that

[t]he probable cause testimony outlines vague information (foot rubs, lotion, texting, etc.) that may be considered "inappropriate" by today's standards for a player and coach, however, they do not constitute evidence that would cause anyone, specifically Gilliland, to believe that a crime had been committed and/or that [K.T.] was being abused or neglected. Because of the nature of the player/coach relationship, the concerning actions could have been innocent and taken out of context. Inappropriate behavior such as that provided in the probable cause hearing at most may result in someone with Gilliland's training and experience to take action and provide monitors to prevent future

---

[12] Criminal deviate conduct involves "deviate sexual conduct," which is defined as "an act involving: (1) a sex organ of one (1) person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object." Ind. Code § 35-31.5-2-94.

20

occurrences but not lead to a belief that there was a necessity to report abuse or neglect. No evidence was provided by the State that Gilliland knew of a sexual relationship.

*Id.*

Contrary to Gilliland's suggestion, knowledge of a "sexual relationship" between Ashcraft and K.T. was not required to trigger his duty to report child abuse or neglect.[13] An adult may commit either sexual misconduct with a minor or child seduction by fondling or touching a child (between fourteen and fifteen or sixteen and seventeen years old, respectively) with the intent to arouse or satisfy the sexual desires of either the child or the

---

[13] The State implies that Gilliland knew that Ashcraft engaged in sexual intercourse or deviate sexual conduct with K.T., Appellee's Br. at 16, but this implication is unsupported by the record.

adult. *See* Ind. Code §§ 35-42-4-9, 35-42-4-7.[14]  Moreover, contrary to Gilliland's

suggestion, those statutes do not require the fondling or touching of a sexual organ.[15]  Based

[14] Indiana Code Section 35-42-4-9(b) states, "A person at least eighteen (18) years of age who, with a child at least fourteen (14) years of age but less than sixteen (16) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits sexual misconduct with a minor, a Class D felony."  The offense is a class C felony if it is committed by a person at least twenty-one years of age. *Id*.  Indiana Code Section 35-42-4-7(k) provides in pertinent part that if a person who is at least eighteen years of age and is the "child care worker" for a child at least sixteen years of age but less than eighteen years of age engages in "any fondling or touching with the intent to arouse or satisfy the sexual desires of either the child or the adult, the person commits child seduction, a Class D felony."  Indiana Code Section 35-42-4-7(d) defines "child care worker" in pertinent part as a person who

> (2) is employed by a:
> > (A) school corporation;
> > …
> attended by a child who is the victim of a crime under this chapter; or
> (3) is:
> > (A) affiliated with a:
> > > (i) school corporation;
> > >
> > > …
> > attended by a child who is the victim of a crime under this chapter, regardless of how or whether the person is compensated;
> > (B) in a position of trust in relation to a child who attends the school or cooperative;
> > (C) engaged in the provision of care or supervision to a child who attends the school or cooperative; and
> > (D) at least four (4) years older than the child who is the victim of a crime under this chapter.
> The term does not include a student who attends the school or cooperative.

[15] Because Ashcraft's conduct could be considered criminal regardless of whether K.T. was fifteen or sixteen years old, we need not address Gilliland's argument that the charging information is defective because it "fails to identify the time frame" for that conduct with respect to K.T.'s age.  Appellant's Br. at 12.

on the foregoing, we conclude that the charging information and the testimony from the probable cause hearing, when taken together and accepted as true, contain facts sufficient to constitute the charged offenses as well as to apprise Gilliland of the charges against him and allow him to prepare a defense. It is for a jury to determine whether Gilliland had reason to believe that K.T. was a victim of child abuse or neglect based on his knowledge that Ashcraft had given foot rubs to K.T. and rubbed lotion on her back.

Gilliland also argues that the charging information fails "to properly allege acts of concealment," Appellant's Br. at 18, but in light of the preceding analysis regarding both concealment and sufficiency, we disagree. In sum, then, we affirm the trial court's denial of Gilliland's motion to dismiss the charging information, but the State need not amend the information to omit any offense alleged prior to October 5, 2007. Accordingly, we affirm in part and reverse in part and remand for further proceedings consistent with this opinion.

---

[15] To the extent Gilliland suggests that a foot rub cannot be performed with the intent to arouse or satisfy sexual desires, we note that our supreme court has characterized the following as "unwelcome and offensive sexual advances":

> After receiving a "pay bonus" from the respondent near the end of 1993 and expressing her gratitude for the bonus, the respondent remarked that she could repay him by allowing him to rub and kiss her feet. Another time, the respondent told her that he would "forgive" her for missing work due to car problems if she would permit him to rub and kiss her feet[.]

*In re Brown*, 703 N.E.2d 1041, 1043 (Ind. 1998). On a related note, Gilliland's counsel told the trial court that rubbing lotion on a child's back is "not a crime anyway, because if it's a crime, I would be in jail because I put lotion on my daughter's back." Tr. at 12-13. Pursuant to Indiana Code Sections 35-42-4-9 and 35-42-4-7, rubbing lotion on a child's back *would* be a crime if the person did so with the intent to arouse or satisfy his or the child's sexual desires. Ashcraft's intent in giving foot rubs and back rubs to K.T. is a matter for a jury to determine.

Affirmed in part, reversed in part, and remanded.

RILEY, J., concurs.

BAILEY, J., concurs in part and dissents in part with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| EDWARD GILLILAND, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 46A03-1202-CR-97 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

**BAILEY, Judge, concurring in part and dissenting in part**

I concur in part and dissent in part. In concluding that Gilliland was timely prosecuted, the majority describes Gilliland's "positive act of concealment calculated to prevent discovery of the fact that a crime had been committed" as "remaining silent when he had a legal duty to speak." Slip op. at 15-16. I believe that, if Gilliland lied to officers on November 21, 2008, he committed a positive act, concealing Ashcraft's crime and thus his

25

own offense of failure to report.[16] However, I disagree with the majority opinion to the extent that it suggests concealment might arise from remaining silent about one's own crime, without more.

The majority reasoning effectively converts the legislatively-enacted two-year statute of limitations applicable to misdemeanor offenses into a non-existent provision where the misdemeanor offense is one of silence. It is not possible to discern the silence constituting the underlying offense from the silence covering the offense.

I must first observe that silence does not constitute overt efforts by Gilliland to avoid his own apprehension, the ordinary and usual objective of the tolling provision. Also, I find it logically untenable that an individual charged with a crime of silence has "concealed" his own crime by continuing his silence. Finally, penalizing an individual for maintaining silence of one's own crime would have Constitutional implications.

Appellate courts must "avoid invading the province of the legislature" and will strictly interpret the language of Indiana Code section 35-41-4-2(h)(2), even if the result is that tolling could continue indefinitely, "a result that seems at odds with the purposes underlying statutes of limitations." Sloan v. State, 947 N.E.2d 917, 923 (Ind. 2011). Nonetheless, "public policy and a strict reading of the statute favor the prosecution of alleged crimes over the protection of defendants who have intimidated victims or otherwise concealed evidence." Id.

---

[16] If Gilliland knowingly gave false information relative to Ashcraft's crime, he may have committed Obstruction of Justice, Indiana Code § 35-44.1-2-2 (formerly 35-44-3-4), or False Reporting or Informing, Indiana Code § 35-44.1-2-3 (formerly 35-44-2-2).

26

"Courts will still need to determine whether concealment exists in the first place. But once concealment is established, the statute of limitations ceases to run until authorities know or should have known sufficient evidence to charge the person with the crime. Id. The tolling statute uses the language "conceals evidence of the offense;" thus, it is arguable that the language of the last statutory revision applies to concealment of any evidence, including evidence of guilt, and thus would toll the statute of limitations in any crime in which a defendant tries to avoid apprehension." Id. at 922. n.8.

Indiana Code section 35-41-4-2(h)(2) provides that "the period within which a prosecution must be commenced does not include any period in which: … the accused person conceals evidence of the offense, and evidence sufficient to charge the person with that offense is unknown to the prosecuting authority[.]" In other words, the tolling statute is directed toward a person's concealment of his own crime, not another person's crime. For example, in Sloan, the accused tolled the statute of limitations by intimidating his victim through threats of jail. 947 N.E.2d at 921. See also Crider v. State, 531 N.E.2d 1151, 1154 (Ind. 1988) (defendant had committed positive acts of intimidation that amounted to concealment). I cannot interpret Gilliland's continued silence to be an attempt to avoid his own apprehension for his earlier silence. If he lied in 2008 and knowingly covered for the crime of another, a False Reporting or Obstruction of Justice charge may have been in order.

Additionally, it would be extremely problematic to determine at what point silence becomes not merely silence that is criminalized as failure to report but silence that is "concealing" silence. Indiana Code section 31-33-5-1, the statute that imposes the general

27

duty to report child abuse, provides that "an individual who has reason to believe that a child is a victim of child abuse or neglect shall make a report as required by this article," and Indiana Code section 31-33-5-4 prescribes that the report must be made "immediately." Thus, one who does not "immediately" report in accordance with the general reporting statute has committed an offense of omission at the time he acquires reason to believe the abuse or neglect exists.

Here, silence is an element of the charged offenses; at what point would sustained silence evolve into separate conduct? Does the failure to speak become "concealment" one moment, one day, one year after the individual first kept silent in the face of "reason to believe" abuse or neglect occurred? Moreover, once the individual possessing such "reason to believe" has remained silent, he has committed a crime and there are constitutional implications. He is entitled, under the Fifth Amendment to the United States Constitution, to avoid self-incrimination and remain silent regarding his earlier omission without fear of reprisal.

For these reasons, I cannot agree that mere silence becomes "concealment." However, if Gilliland lied to police, such could constitute concealment.

Nor am I persuaded that the failure to report is a continuing offense such that no statute of limitations applies. Even violent crimes, not including murder, are subject to statutes of limitations; this is a misdemeanor offense to which the misdemeanor statute of limitations should apply. Otherwise, the State – at the unfettered discretion of the prosecutor – may take a heavy-handed approach to coerce evidence from individuals who did not

commit affirmative acts of abuse or neglect but may have misconstrued the actions of others.

The threat of prosecution could be looming over the head of a non-reporting person years after those who commit affirmative acts are afforded relief by statutes of limitations.

In my view, the trial court properly denied Gilliland's motion to dismiss while concluding that concealment did not occur until the affirmative statement of November 21, 2008. Thus, I agree with the majority's decision to affirm the trial court's denial of the motion to dismiss the charging information, but I dissent from the instruction that the State need not amend the information. I agree that the State alleged facts sufficient to constitute the charged offenses.