## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 15 2018, 10:29 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Daniel A. Greer, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | November 15, 2018 <br><br> Court of Appeals Case No. 18A-CR-625 <br><br> Appeal from the Gibson Superior Court <br><br> The Honorable Robert Krieg, Judge <br><br> Trial Court Cause No. 26D01-1707-F5-688 |

**Altice, Judge.**

## Case Summary

[1] Following a jury trial, Daniel A. Greer was convicted of child seduction as a Level 5 felony and sentenced to three years. On appeal, Greer presents two issues for our review, which we restate as the following:

>    1.    Did the trial court improperly instruct the jury on uncharged offenses?

>    2.    Is the evidence sufficient to support his conviction?

>    3.    Did the admission of evidence relating to Greer's character and prior bad acts amount to fundamental error?

[2] We affirm.

## Facts & Procedural History

[3] J.E., born in September of 2000, was a middle school student when he first met Greer, a school resource officer at the school J.E. attended. Greer and J.E. spoke mostly at lunch, but Greer also went to some of J.E.'s classes where they would talk and socialize. During his eighth-grade year, J.E. was a teacher's aide and when the class he worked in was out of the classroom, Greer would often come in and socialize with J.E. J.E. trusted Greer and viewed him as a friend and as someone "to communicate with if [he] ever needed anybody." *Transcript Vol. II* at 174. On one occasion, Greer "stood up" for J.E. when J.E. was on an overnight school trip in eighth grade. *Id.* On another occasion, Greer asked J.E. to help him in an official capacity by assisting with an investigation into whether a gas station would sell alcohol to minors. This

investigation, however, never materialized. J.E. felt like Greer sought him out and spoke to him more than to other students.

[4] When J.E. was sixteen years old and in high school and Greer was in his late twenties, they began communicating via social media applications such as Facebook, Kik, Snapchat, and Grindr. Initially, Greer and J.E. started messaging through Facebook, where they "got to know each other better" and "talked pretty deeply in conversation." *Id*. at 177. Their conversations "did lead to a relationship" that was "mostly sexual," so they began using the Kik application because it was more difficult to track and trace their messages. *Id*. Greer and J.E. discussed having sex "pretty seriously." *Id*.

[5] Late one night in January or February of 2017, when J.E. was still sixteen years old, Greer came to J.E.'s mother's house, where J.E. was staying that night by himself. Greer parked down the street and entered the house through the garage. Greer and J.E. made their way to J.E.'s bedroom, where Greer performed oral sex on J.E. They later talked about their encounter on Kik, but never discussed it at school. Greer continued to contact J.E. about sex, but J.E. did not respond and mostly ignored Greer's subsequent messages.

[6] At some point, a teacher notified another school resource officer about an allegation that Greer had had an inappropriate relationship with a female student at the high school. During the ensuing investigation, a detective contacted J.E. J.E. "started freaking out a little bit," so he called Greer to ask him what to say and do. *Id*. at 180. Greer encouraged J.E. not to tell anyone

about what had happened and told him that they could come up with a story to cover up what had occurred between them. At that time, J.E. "had a lot of feelings" for Greer and did not want to see Greer lose his job, so he lied to the detective. *Id.* J.E. eventually told law enforcement about his sexual encounter with Greer.

[7] On July 24, 2017, the State charged Greer with Level 5 felony child seduction under Ind. Code § 35-42-4-7(n), and the charge alleged that Greer was a child care worker for J.E.[1] On November 16, 2017, the Stated filed an amended information adding the allegation that Greer was a law enforcement officer, adjusting the dates of the offense, and adding a statutory citation to I.C. § 35-42-4-7(d)(1), (2), and (3), which defined the term "child care worker" for purposes of the child seduction statute. The State filed additional, amended charging informations on January 2 and 5, 2018, to add statutory citations to subsections (o) and (m) of I.C. § 35-42-4-7, respectively, of the child seduction statute. Greer was advised of each amendment to the charging instrument and made no objection thereto. A jury trial was held on January 10 and 11, 2018. In its final instructions, the trial court instructed the jury on the elements the State was required to prove under each of the three alternate theories of liability found under subsections (m), (n), and (o). In final instructions four, five, and six, the trial court defined the terms "child care worker" as used in subsection (m), "professional relationship" as used in subsection (n), and "law

---

[1] The citation for child seduction by a child care worker should have been to subsection (m).

enforcement officer" as used in subsection (o), respectively. Greer did not object to any of the final instructions. Using a general verdict form, the jury found Greer guilty as charged. On February 14, 2018, the trial court sentenced Greer to three years. Additional facts will be provided as necessary.

## Discussion & Decision

### 1. Final Instructions

As pertinent here, I.C. § 35-42-4-7 defines child seduction under separate subsections as follows:

> (m) If a person who:
>   (1) is at least eighteen (18) years of age; and
>   (2) is the:
> \* \* \*
>       (B) child care worker for;
> a child at least sixteen (16) years of age but less than eighteen (18) years of age;
> engages with the child in sexual intercourse, other sexual conduct (as defined in IC 35-31.5-2-221.5), or any fondling or touching with the intent to arouse or satisfy the sexual desires of either the child or the adult, the person commits child seduction.
>
> (n) A person who:
>   (1) has or had a professional relationship with a child at least sixteen (16) years of age but less than eighteen (18) years of age whom the person knows to be at least sixteen (16) years of age but less than eighteen (18) years of age;
>   (2) may exert undue influence on the child because of the person's current or previous professional relationship with the child; and
>   (3) uses or exerts the person's professional relationship to engage in sexual intercourse, other sexual conduct (as defined in IC 35-31.5-2-221.5), or any fondling or touching with the child with the intent to arouse or satisfy the sexual desires of the child or the person;

commits child seduction.

(o) A law enforcement officer who:
    (1) is at least five (5) years older than a child who is:
        (A) at least sixteen (16) years of age; and
        (B) less than eighteen (18) years of age;
    (2) has contact with the child while acting within the scope of the law enforcement officer's official duties with respect to the child; and
    (3) uses or exerts the law enforcement officer's professional relationship with the child to engage with the child in:
        (A) sexual intercourse;
        (B) other sexual conduct (as defined in IC 35-31.5-2-221.5); or
        (C) any fondling or touching with the child with the intent to arouse or satisfy the sexual desires of the child or the law enforcement officer;
commits child seduction.

Here, the final, amended charging information states:

> Daniel A. Greer, DOB: 02/18/1987, being at least eighteen (18) years of age, and the child care worker/law enforcement officer for J.E. (victim), . . . a child at least sixteen (16) years of age but less than eighteen (18) years of age, during the months of January/February, 2017 in the County of Gibson, State of Indiana, did knowingly or intentionally engage with J.E. (victim) in sexual intercourse, or other sexual conduct (as defined in IC§35-31.5-2-221.5), or any fondling or touching with the intent to arouse or satisfy the sexual desires of J.E. (victim) or Daniel A. Greer (defendant),

> All contrary to the form of the statute in such cases made and provided, to to-wit: §35-42-4-7(d)(1), (2), (3); §35-42-4-7(m); §35-42-4-7(n); § 35-42-4-7(o) and 35-42-4-7(q)(2), Child Seduction, a Level 5 Felony.

*Appellant's Appendix Vol. II* at 54 (emphasis omitted).

[9] Acknowledging that he did not object at trial, Greer argues that the trial court "issued fundamentally erroneous final jury instructions." *Appellant's Brief* at 7. Our Supreme Court has described the fundamental error standard as a "daunting" one, applicable only in egregious circumstances. *Knapp v. State*, 9 N.E.3d 1274, 1281 (Ind. 2014). "To qualify as fundamental error, 'an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible' and must 'constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process.'" *Absher v. State*, 866 N.E.2d 350, 355 (Ind. Ct. App. 2007) (quoting *Benson v. State*, 762 N.E.2d 748, 755 (Ind. 2002)). The fundamental error exception is extremely narrow and "reaches only errors that are so blatant that the trial judge should have taken action sua sponte." *Id*.

[10] Greer does not argue that the instructions contained an incorrect statement of the law or otherwise misled the jury. Rather, Greer claims that the trial court erroneously instructed the jury on uncharged offenses. Specifically, Greer asserts that he was charged only with the offense of child seduction under subsection (m), and therefore, the final instructions to the jury regarding the other two manners in which the offense of child seduction can be committed as defined under subsections (n) and (o) were erroneous. Greer argues that he was not charged under subsections (n) and (o) because some of the elements of those offenses under the statute were not recited in the charging information.

[11] We first consider the charging information. "The purpose of the charging information is to provide a defendant with notice of the crime of which he is

charged so that he is able to prepare a defense." *Gilliland v. State*, 979 N.E.2d 1049, 1060 (Ind. Ct. App. 2012) (quoting *State v. Laker*, 939 N.E.2d 1111, 1113 (Ind. Ct. App. 2010), *trans. denied*); *see also* Ind. Code § 35-34-1-2(a) (setting forth the requirements for a charging information). "The State is not required to include detailed factual allegations in a charging information." *Laney v. State*, 868 N.E.2d 561, 567 (Ind. Ct. App. 2007), *trans. denied*. "An information that enables an accused, the court, and the jury to determine the crime for which conviction is sought satisfies due process. Errors in the information are fatal only if they mislead the defendant or fail to give him notice of the charge filed against him." *Dickenson v. State*, 835 N.E.2d 542, 550 (Ind. Ct. App. 2005) (citations and quotation marks omitted), *trans. denied*. "[W]here a charging instrument may lack appropriate factual detail, additional materials such as the probable cause affidavit supporting the charging instrument may be taken into account in assessing whether a defendant has been apprised of the charges against him." *Laker*, 939 N.E.2d at 1113.

[12] Here, we find that the charging information afforded Greer adequate notice that he was charged with child seduction under three different subsections. Although the charging information did not set out all of the elements of the offenses in subsections (n) and (o), it did include correct statutory citations to those provisions and otherwise identified the timing, the victim, and conduct giving rise to the charge.

[13] Further, Greer does not, and indeed cannot, argue that he was misled or left unable to prepare a defense to what he now claims were uncharged offenses.

During opening statements, Greer admitted that there was a sexual relationship between him and J.E., but argued that such relationship was consensual and not a result of Greer's use of his position of authority, which is a required element of the offense under subsections (n) and (o). During cross-examination, Greer continued with his defense, seeking clarification from witnesses as to his status as a law enforcement officer and the nature of his role as a school resource officer, which responses he later referenced as evidence negating some of the elements of subsections (n) and (o). During closing argument, Greer parsed the elements of the child seduction offenses under each subsection and urged the jury to find that the evidence did not support a finding that he used his position of authority, either as a police officer or through a professional relationship, to exert undue influence over J.E. to engage in the sexual relationship with J.E. Having concluded that Greer was charged with child seduction under subsections (m), (n), and (o), the trial court did not commit error, let alone fundamental error, in instructing the jury as to the elements of each of those offenses.

## 2. Sufficiency

[14] To the extent Greer argues that the evidence is insufficient to support his conviction, we disagree. In reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Atteberry v. State*, 911 N.E.2d 601, 609 (Ind. Ct. App. 2009). Instead, we consider only the evidence supporting the conviction and the reasonable inferences flowing therefrom. *Id*. If there is substantial evidence of probative

value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, the judgment will not be disturbed. *Baumgartner v. State*, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008).

[15] Because Greer does not challenge that he was charged with child seduction by a child care worker, we consider the evidence as it relates to this charge. To convict Greer under subsection (m), the State was required to prove that Greer, being at least eighteen years of age, was a child care worker for J.E., who was at least sixteen years of age but less than eighteen years of age, and that Greer engaged with J.E. in sexual intercourse or other sexual conduct with the intent to arouse or satisfy the sexual desires of either himself or J.E. I.C. § 35-42-4-7(d) defines child care worker in pertinent part as a person who

> (3) is:
> (A) affiliated with a:
> (i) school corporation;
> * * *
> attended by a child who is the victim of a crime under this chapter, regardless of how or whether the person is compensated;
>
> (B) in a position of trust in relation to a child who attends the school; or cooperative;
>
> (C) engaged in the provision of care or supervision to a child who attends the school; or cooperative; and
>
> (D) at least four (4) years older than the child who is the victim of a crime under this chapter.

Greer challenges the sufficiency of the evidence only as it relates to whether he was a child care worker for J.E. at the same time the sex act occurred, noting that this provision is written in the present tense.

[16] Here, J.E. testified regarding the uniforms worn by school resource officers at both the middle school and high school he attended, that he did not believe he would suffer any consequences at school if he refused Greer's sexual advances, and that he and Greer discussed the sexual act afterward, but never at school. From this evidence, the jury could have drawn a reasonable inference that Greer was a child care worker for J.E. at the time the sex act occurred. There is sufficient evidence to support Greer's conviction for child seduction.

### 3. Admission of Evidence

[17] Greer also argues that the trial court abused its discretion in admitting evidence that he knowingly communicated with two teenagers who are not victims in this case over social media dating sites. Greer argues that such evidence was irrelevant and amounted to impermissible character and prior bad act evidence in violation of Ind. Evidence Rules 401, 402, 403, and 404. Acknowledging that he did not preserve the alleged error for review, Greer now asserts fundamental error to avoid waiver.

[18] As noted above, the fundamental error exception is extremely narrow and the proponent—here, Greer—must show that the error was "so prejudicial to the rights of the defendant as to make a fair trial impossible." *Absher*, 866 N.E.2d at 355 (quoting *Benson*, 762 N.E.2d at 755). To meet this daunting standard,

Greer is required to "show that the trial court should have raised the issue sua sponte due to a blatant violation of basic and elementary principles, undeniable harm or potential for harm, and prejudice that makes a fair trial impossible." *Harris v. State*, 76 N.E.3d 137, 139 (Ind. 2017).

[19] Greer argues that the fact he communicated with two other teenagers on social media dating sites had no bearing on whether he had inappropriate sexual contact with J.E. in his capacity as a child care worker. In this regard, Greer asserts the evidence served only to show that he communicated with the other teenagers "presumably to solicit an improper sexual relationship" with them. *Appellant's Brief* at 31.

[20] We note that there was no testimony concerning the nature of the communications between Greer and the other teenagers and the State made no argument that Greer solicited them for a sexual relationship. Additionally, the fact that Greer communicated with the other teenagers is not evidence of misconduct, of a crime, or of any other bad act.

[21] Even if it were error to admit the testimony of the communication with other teenagers, such admission did not amount to fundamental error. Greer did not deny that he had communicated with J.E. through social media or that he performed oral sex on J.E. Rather, Greer argued that he did not meet the status of perpetrator that made the consensual sex act illegal, i.e., that he was not a child care worker over J.E. when the sex act occurred. As we determined herein, the State presented sufficient evidence from which the jury could have

reasonably inferred that Greer served as a child care worker at the high school J.E. attended and at the requisite time. Greer has not established that the admission of the testimony from the other teenagers rendered a fair trial impossible.

Judgment affirmed.

Brown, J. and Tavitas, J., concur.